## DAHL v. ROACH et al.

No. 4645.  Decided April 24, 1930.  (287 P. 622.)

*Fabian & Clendenin,* of Salt Lake City, for appellant.

*P. C. Evans* and *Stewart, Alexander & Budge,* all of Salt Lake City, for respondents.

FOLLAND, J.

This case was argued at a former term of court and the judgment affirmed in an opinion written by Mr. Justice Gideon. Thereafter, upon petition, a rehearing was granted and the case was again argued before the court. We have reached the conclusion that the former decision should stand. We adopt the opinion written by Mr. Justice Gideon, with one or two slight changes, and have added some paragraphs at the end to dispose of matters raised by the motion for rehearing.

Plaintiff claims a right to travel over certain lands occupied by the defendant William R. Roach under contract of purchase from the defendant Ethan Jeremy and wife. This action is to enjoin defendants from obstructing or interfering with such claimed right.

The claimed right of way is described in the complaint by metes and bounds. The property is situated in Summit county, this state. The trial court entered judgment in favor of defendants. From that judgment this appeal is prosecuted.

The findings of the trial court are that in about the year 1892 there was a public road or highway extending from Salt Lake City to Park City, Utah, which passed the ranch of plaintiff and continued on in a southwesterly direction from that point toward Park City; that said highway was a main thoroughfare from Salt Lake City to Park City; that it extended over a portion of the land owned by the defendant Ethan Jeremy and along the course of the right of way described in the complaint. The court also found that such highway was used by plaintiff and his predecessors in interest, and by the general public, as a public highway; that about the year 1905 the course of the highway

was changed, and from that time on did not pass over the way described in the complaint; that after the year 1905 the public ceased to use what is designated as the "old highway" and which extends over the land described in the complaint; that after the discontinuance of the use of the portion of such highway mentioned by the general public the plaintiff, in the years 1914, 1915, 1916, 1917, 1918, and 1919 leased from Ethan Jeremy, he being the admitted owner, the land described as the right of way claimed by plaintiff, and that thereafter plaintiff again leased such land for a valuable consideration during the years 1921, 1922, and 1923; that plaintiff occupied said premises during said periods under said lease; grazed cattle upon the land so leased, and that plaintiff would, from time to time when it suited his convenience, drive cattle over said leased premises and over that portion of the land set apart and originally used as a highway. The court also found that such use and occupancy of the lands and such driving of cattle over the same, since said highway ceased to be a public road, was under and by virtue of the lease and not otherwise. The court also found that plaintiff and his predecessors in interest had not used the right of way for twenty years last past openly, continuously, or adversely, or under claim of right so to do, and that whatever use had been made of said premises or right of way over the same by plaintiff, since said way had ceased to be a public road, was a permissive use from defendant Jeremy.

It is undisputed that the claimed right of way was at one time a part of a public road or highway over which the public traveled leading from Salt Lake City and other points to Park City. It is likewise established that about the year 1905 the road was changed and moved 200 feet east and that thereafter the public ceased to use the old highway. At a later date the road was again changed to a point still farther east. No work was done, neither were improvements made on the way in question by the public officials after 1905.

Prior to 1911 we had a statute (Comp. Laws Utah 1907, § 1116) which provided:

"All highways once established must continue to be highways until abandoned by order of the board of county commissioners of the county in which they are situated, by operation of law; or by judgment of a court of competent jurisdiction; provided, that a road not used or worked for a period of five years ceases to be a highway."

In 1911 that section of our statutes was amended (Laws 1911, c. 142). It is now section 2802, of the Comp. Laws Utah 1917, and reads:

"All highways once established must continue to be highways until abandoned by order of the board of county commissioners of the county in which they are situated, or by judgment of a court of competent jurisdiction."

In this case the trial court found that the way in controversy was abandoned as a highway in 1905. The statute then provided that a highway thus abandoned and not used or worked for a period of five years ceased to be a highway. It thus appears that any claim for a right to use this highway on the part of plaintiff, by reason of it at one time having been a public road or highway, terminated at the end of five years after the abandonment of the road in 1905. The amendment quoted above was not adopted until 1911.

The land over which the right of way is claimed is not inclosed by fence. It is used for grazing purposes only, and, so far as the record discloses, it has no value other than for grazing purposes. There is some testimony on the part of plaintiff that he and his brothers, who were associated with him much of the time in controversy, drove their cattle over this right of way. It appears from the record that plaintiff owned lands lying both to the north and to the south of this land over which the right of way is claimed.

The record fails to support plaintiff's claim for two reasons. (1) The testimony is not conclusive of any open, adverse, continuous, uninterrupted, and exclusive use of the

way with the knowledge and acquiescence of the owner of the servient estate, and (2) it appears without dispute that during at least seven of the years necessary to create a prescriptive right the plaintiff occupied the premises as a tenant of the owner.

The first headnote to *Tarpey* v. *Veith*, 22 Cal. App. 289, 134 P. 367, is:

"A right of way claimed by a prescription was not established without showing that the use was adverse, and under claim of right communicated to the owner, or was so continuously, openly and notoriously adverse as to create the presumption of knowledge."

Among other cases cited to the same effect are: *Crosier* v. *Brown*, 66 W. Va. 273, 66 S. E. 326, 25 L. R. A. (N. S.) 174; *Gardner* v. *Swann*, 114 Ga. 304, 40 S. E. 271; *Schulenbarger* v. *Johnstone*, 64 Wash. 202, 116 P. 843, 35 L. R. A. (N. S.) 941; *Watson* v. *Board of County Com'rs*, 38 Wash. 662, 80 P. 201.

Plaintiff makes no claim that the owner of the servient estate was ever notified that plaintiff claimed a right to travel or use the way in controversy. Nothing was ever said at any time to the owner of the servient estate that plaintiff did claim such a right. The evidence on behalf of defendants is to the effect that no right was ever granted to plaintiff to use such way for any purpose whatever. Moreover, the proof by plaintiff's own witness, of the use by plaintiff of defendant Jeremy's land, does not show that in driving cattle to or over said premises, or in driving wagons or other vehicles thereover, they were confined to any particular strip or portion of Jeremy's land. In fact, the testimony fails to show a continuous and exclusive use of the right of way not only for the prescriptive period, but for any length of time whatever. Furthermore, the court found, and the finding is supported by the testimony, that the plaintiff for nine years occupied the premises over which the way is claimed as a tenant. The Court of Civil Appeals of Texas, in *Sassman* v. *Collins*, 53

Tex. Civ. App. 71, 115 S. W. at page 339, says: "Again, a continuity of the possession in this case, even if it could be conceded to have been otherwise adverse, was broken, because during six or seven years of the time that appellees were exercising the right to pass thereover they were shown to have been tenants of the owner or owners of said tract of land over which the passway was claimed. The possession and user of the tenant is the possession and user of the landlord, and therefore cannot be adverse. It is held that where the owner of the dominant estate has been the tenant of the owner of the servient estate, and had control over the servient estate as such tenant, the period of such tenancy must be excluded in computing the prescriptive period. Washburn on Easements (3d Ed.) 336; *Vossen* v. *Dautel*, 116 Mo. 379, 22 S. W. 734; *Pierre* v. *Fernald*, 26 Me. 436, 46 Am. Dec. 573; 14 Cyc. pp. 1153, 1154."

The foregoing authorities sufficiently indicate the law applicable to the facts established by the testimony in this record.

On rehearing it was argued that there was no evidence before the trial court to support the finding that "in about the year 1905 said highway was repaired and the course of same was changed" and that "after the █ year 1905 the public ceased to use said old portion of said highway which passes over the lands of said Ethan Jeremy."

The issues were framed and the case tried upon the theory of prescriptive right in plaintiff to the way described. The affirmative allegations in the pleadings with respect to an old road, its nonuse by the public, and change to a new highway, are found in an amendment to plaintiff's complaint made at the close of plaintiff's case. There it is alleged "the exact date at which the public generally ceased to use said highway plaintiff is unable to state, but said highway because of a change of location ceased to be used by the public generally." No attempt was made to show from any official source when the public authorities made

the changes and established the new road. At the close of the case, and before arguments, the trial judge said:

"There is one question that could be fixed. I don't know that counsel care to fix it. Could you stipulate when those two changes in the road were made?"

Counsel for plaintiff made no reply, but one of counsel for defendant said "That is entirely immaterial. We don't care to stipulate at all." It would seem therefore the exact date of change from the old road became an important factor only on appeal. There were two changes in the highway but we are concerned only with the date of the first shifting of the road to the east of the old one. The evidence on this point comes from men who depend on their memory for the date. The trial was held in December of 1926. Appellant and his witnesses testified the change was made "possibly 20 years ago," "either 22 or 23 years ago," and one of them fixed the time as early as 1900. The evidence is ample to support the finding that the change was made in 1905.

We also find evidence to support the finding that "after the year 1905 the public ceased to use said old portion of said highway." Counsel for plaintiff, in his opening statement to the court, said:

"It is now approximately 20 or 22 years, or a little more than that, since this road has been used, except occasionally a person going over it going to Park City."

Dahl, the appellant, testified on cross-examination:

"Q. But in any event after the road was changed then the public traveled the highway as changed? A. The general public did, yes."

And again, after saying that sometimes in winter when the highway was blocked with snow persons would use the old road, he was asked:

"Q. They never used the upper road in summer did they? A. Not after the general public had quit it."

While there is evidence of an occasional use, particularly by plaintiff and those associated with or employed by him, the implications arising from the evidence clearly indicate that the general public used the new road from and after the time it was opened. There is no proof whatever of the public authorities doing any work on the old road after the change was made.

The judgment appealed from is affirmed, with costs.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and EPHRAIM HANSON, JJ., concur.