## SAVAGE v. NIELSEN et al.

No. 7100.   Decided August 26, 1948.   (197 P. 2d 117.)

24

See 28 C. J. S., Easements, sec. 35. Roadway or pathway used at time of severance of tract as visible or apparent easement, see note, 164 A. L. R. 1001. See, also, 17 Am. Jur. 959.

*Melvin C. Harris,* of Logan, for appellant.

*H. A. Sjostrom,* of Logan, for respondents.

PRATT, Justice.

This is an appeal from a judgment in the lower court in favor of the defendant wherein an easement over plaintiff's property was quieted in the defendant. The cause was tried

to the court without a jury. The defendant Smith, filed a disclaimer of any interest in the matter.

The defendant's answer sets up four contentions: (1) acquisition of the easement by prescription; (2) that Albert Savage and his wife, when they conveyed to Emmett Savage conveyed or gave to Emmett Savage the right of way which is in dispute; (3) that there is a public road in use for more than sixty years past covering that part of the plaintiff's property as now used as a right of way by the defendant; and (4) by an amendment to the defendant's answer, a way of necessity.

Number (2) may be eliminated since it was not further advanced, and the facts establish that no such conveyance was ever made. Number (3) may also be disregarded since uncontroverted evidence was that the old road previously in existence had been abandoned in 1913, and also that it was situated further east than the alleged easement.

Since the facts together with the description of the properties in dispute become rather complicated, we deem it best at this point to plot the tracts of land on a map setting out the essential features so that it may be used together with the facts as hereafter set out to give greater clarity and understanding of the physical situation. The map is not made to scale, and is illustrative only:

A. Road across north end of field when Emmett Savage owned it.

B. North crossing used most by Emmett before canal was put in, using 15 rods of Gordon's land.

C. Hyrum Branch Canal.

D. Crossing where the bridge now is, using 40 rods of Gordon's land.

E. Alleged easement, 20 feet wide, by 40 rods long.

The facts are as follows:

Prior to 1922, Albert Savage was owner of a large tract of land in Hyrum, Cache County, Utah, which tract included all the land presently in controversy as described in the pleadings. At that time there existed a road running north and south through his property, which was used by one Joseph M. Smith and possibly others. This road however was abandoned in 1913 when Albert Savage conveyed to the said Smith a twenty foot strip to the west of the Smith land and the Savage land. This strip was thereafter used as a road by farmers whose land adjoined said strip. The exact location of the old road through Savage's land was not testified to, but the testimony, which was not controverted seems fairly to establish that it lay somewhere east of the presently alleged easement, and for all practical purposes may be disregarded in further consideration of this cause.

In 1922, Albert Savage conveyed a part of the tract owned by him to his son, Emmett Savage. The part conveyed to Emmett Savage consisted of the west part of the tract owned by Albert Savage, so that it bordered on the twenty foot strip which had been conveyed by Albert Savage to Smith. The deed to Emmett Savage described this strip and excepted it from the conveyance. Between the twenty foot strip and most of the land conveyed to Emmett Savage, and running parallel to the 20 foot strip, there exists the main Wellsville Irrigation Canal which testimony established as being about eighteen feet wide at this point. The terrain is such that the canal is lower than the Emmett Savage property, being near the base of, and cut into, a hill along the west side of the Emmett Savage property. The testimony indicated that the canal as it exists is capable of being forded, but that this could not be done with farm loads of produce, hay and grain.

Bounding the part of the tract retained by Albert Savage to the north is a street which comes to a dead end at about the boundary of the then Albert Savage property.

This street is denominated Second North Street. Emmett Savage was in the habit of crossing a part of the land retained by his father immediately east of his own land to reach Second North Street, rather than fording or bridging the Wellsville Canal to the west of his property. The evidence clearly indicates that he made a considerable use of it in hauling out crops. The exact extent of this use is in dispute.

In 1930, Albert Savage conveyed the balance of the tract to another son, Gordon Savage, the plaintiff. There is nothing to indicate a right of way either in the Emmett Savage deed, or in the Gordon Savage deed. Thereafter, however, Emmett Savage continued to use the same part of the Gordon Savage land as a means of ingress and egress as he had used when Albert Savage owned the property. A description of the land used by him reduced to its simplest terms is that he would cross onto the Gordon Savage land to the east, then turn north along the boundary line between the two properties which at this time was marked by a private irrigation ditch, then out the gate or opening at the north end of Gordon's field, and onto Second North Street.

The Hyrum Irrigation Canal, a branch canal was put through in 1935. It was put in along the line of the old private ditch previously referred to which was along the east line of the then Emmett Savage property; running north and south. Thereafter, in 1935, Emmett Savage applied to the Bureau of Reclamation and was given funds to construct a bridge across his branch canal, which he proceeded to do at the point where it now is, and the point at which it crosses the Hyrum Irrigation Canal is the southermost point claimed by the present defendant as a part of his easement in the Gordon Savage land. Emmett Savage testified that he had a road across the top end of his land when he owned it, and used only a part of the Albert Savage (now Gordon Savage) land, amounting to about 15 rods north and south generally, but that he infrequently used more when he crossed at the point further south where the bridge now is. When the Bureau of Reclamation would

allow him only enough money to put in one bridge he elected to put it at the southermost point where he crossed the canal onto the now Gordon Savage land. At this point it is necessary to use approximately 40 rods of the Gordon Savage land as a means of ingress and egress to Second North Street. It is this latter way which the defendant seeks to have established as a right of way in his favor.

Emmett Savage sold and conveyed his land to the defendant ElRoy Nielsen in 1936. Nielsen thereafter, until the plaintiff instituted this action, continued to use the alleged right of way, and has graveled it and made it a passable roadway.

The bulk of the proofs by far, in the trial of this cause, went to the question of an implied grant or way of necessity. A resume of the testimony relating to a way of necessity is as follows:

After preliminary testimony establishing a conveyance from Albert Savage to Emmett Savage of the land now owned by Nielsen, the defendant Nielsen testified that the Wellsville Canal ran inside his property line on the west side and was approximately eighteen feet wide, and cut in close to the base of a steep hill, and after crossing it there is a steep drop; that there was a road west of the canal and he did not know whether it was a public or private road (later he testified that it was private); that if he were forced to go across the canal to the west, it would amount to a seven block detour in reaching his home; that it would be impossible to cross the canal without a bridge with a four ton load of beets and was pretty hard to cross with an ordinary load; that each spring the canal is scraped out making the banks more abrupt; that it would cost him $500 to bridge the canal; that his neighbor, Liljenquist, had bridged the canal for less, but that conditions on his property were different; that he was sure the company would insist on cement abutments and fill because the water washes over at this place; that he had maintained a ford; that it could be made passable; that as road supervisor he had

graveled the west road and knew that people generally use it to haul crops and go on their land.

James G. Christiansen testifying for the defendant stated that he crossed the canal with a wagon and that it was a terrible crossing because as soon as you get across you make a large dip and if you don't have a good outfit you couldn't think of crossing it; that it is not impossible to have a crossing over the canal; that he as a farmer did not in his farm work use the west crossing because it wasn't feasible; that to build a crossing and carry the road up the hill until it gets to the east of the hill would be a tremendous job.

LeRoy Smith testified that his father held the deeds to the west road but that others helped build it, including Albert Savage, who deeded the road to Smith; and that the other adjacent property owners used the road without objection from his father; that no one was prevented from using the road.

Gordon Savage testified that under presently existing circumstances it was much easier to use the alleged easement than cross the Wellsville canal.

Elmer Eliason testified as to the parties who helped build the west road; and that it was well established and used by all neighbors so far as he had observed.

Nephi Liljenquist testified that all the neighbors used the west road; that he thought it was a public road; that it would only be convenient to cross the Wellsville canal if there was a bridge built; that a bridge could be built across the canal to the north; that he has so far spent $100 on his own bridge, in addition to his labor.

Emmett Savage testified that when he had the Nielsen land he hauled hay across the Wellsville Canal and down the west road to his cows; that you could get through with half a load of hay.

Alonzo Savage testified that all the land owners used the west road; that it was practical to build either a ford or bridge across the canal; that it would cost approximately $250 to build; that if built the entire Nielsen tract would

be available to the west road; that the canal without a bridge was an inconvenient obstruction.

The findings of fact and conclusions therefrom appear to have been based upon the theory of a prescriptive right, gained by continuous, open, notorious, adverse use under a claim of right, in favor of the defendant.

One of the errors urged by counsel for the appellant is the failure of the trial court to make a finding in favor of the appellant that no such way of necessity existed, or any other finding as to a way of necessity. Let us first then consider this problem for a moment.

The theory upon which a way of necessity is based is that all the property is once owned by a single person. He divides it into two tracts and conveys away one tract. The physical location of the other tract is such that it is not reasonably accessible without crossing the tract conveyed away. If the grantor retains the tract which is thus surrounded, without any mention of a way, it is presumed that he intended to reserve a right of way to and from the tract retained. If he sells the tract which is thus surrounded without mention of a means of ingress and egress it is presumed that he intended to create a servient estate in himself to the extent of a right of way in favor of the other tract of land. The requirements for a way of necessity are set out in the case of *Morris* v. *Blunt,* 49 Utah 243, 161 P. 1127, 1132, as follows:

"(1)  Unity of title followed by severance;
"(2)  That at the time of the severance the servitude was apparent, obvious, and visible;
"(3)  That the easement is reasonably necessary to the enjoyment of the dominant estate; and
"(4)  It must usually be continuous and self-acting, as distinguished from one used only from time to time when occasion arises."

See also: *Adamson* v. *Brockbank,* 112 Utah 52, 185 P. 2d 264; citing *Morris* v. *Blunt,* and reaffirming requirement number three above, and discussing generally the doctrine of easements by implication, and reasonable necessity;

*Smith* v. *Sanders,* 112 Utah 517, 189 P. 2d 701, *Fayter* v. *North,* 30 Utah 156, 83 P. 742, 6 L. R. A., N. S., 410.

It is apparent then, from an analysis of the above requirements, that the doctrine has its basis in the theory of a grant by reason of the circumstances attendant at the time of the grant. It is inconsistent with the adversity contemplated in the theory of an easement based upon prescription.

A way of necessity arises from the existence of such necessity at the time of the dividing of the property. A right of way by prescription can only be attained by satisfying certain other requirements. These requirements may, for all practical purposes, be included within the three set out below, although the cases under particular fact situations have emphasized other subdivisions. The three uses are: (1) Continuous; (2) Open; and (3) Adverse under a claim of right. See: *Jensen* v. *Gerrard,* 85 Utah 481, 39 P. 2d 1070; *Dahl* v. *Roach,* 76 Utah 74, 287 P. 622; *Bowers* v. *Gilbert,* 63 Utah 245, 224 P. 881; *Morris* v. *Blunt,* supra; *Bolton* v. *Murphy,* 41 Utah 591, 127 P. 335; *Lund* v. *Wilcox,* 34 Utah 205, 97 P. 33. For a recent discussion of the elements necessary to attain a prescriptive right, and the confusion that has existed on this matter in the past, see: *Zollinger* v. *Frank,* 110 Utah 514, 175 P. 2d 714, 170 A. L. R. 770.

The distinction between a way of necessity and a prescriptive right is set out in *Bertolina* v. *Frates,* 89 Utah 238, 57 P. 2d 346, 350; as follows:

"Ways of necessity arise by virtue of conditions entirely different from ways created by prescription. A prescriptive right can be acquired by anyone. It may be appurtenant or in gross. There need be no connection so far as the chain of title is concerned between servient and dominant estates, but ways of necessity exist only where the title springs from a common source."

And, as indicated in 28 C. J. S., Easements, § 18, page 674:

"*A right of way of necessity* over another's land is distinguished from a right of way by prescription, and *cannot ripen into a prescrip-*

*tive easement while the necessity continues.* Where one has the right to use an easement by the grant of the owner as a way of necessity, the user cannot be adverse, at least where the user does not exceed the right, until after the necessity has ceased and the land owner has notice of a hostile claim." (Italics added.)

It is well established as the rule in Utah that the prescriptive period is twenty years as it was at the common law. See: *Morris* v. *Blunt,* supra; *Lund* v. *Wilcox,* supra; *North Point Consolidated Irr. Co.* v. *Utah & S. L.* ■ *Canal Co.,* 16 Utah 246, 271, 52 P. 168, 40 L. R. A. 851, 67 Am. St. Rep. 607; *Funk* v. *Anderson,* 22 Utah 238, 61 P. 1006; *Harkness* v. *Woodmansee,* 7 Utah 227, 26 P. 291.

Let us now pass to a consideration of the facts upon which the lower court apparently found an easement by prescription. They are sketchy compared to the bulk of testimony relative to a way of necessity.

At the outset, it may be admitted from the testimony, that since the present defendant acquired the land west of the Hyrum Branch Canal, he has used the alleged easement claiming a right to do so; and this since 1936. In fact most of the testimony introduced by the defendant relates to the period since 1936.

A brief resume of the testimony is as follows:

One witness testifying for the defendant testified that he had helped Emmett Savage haul a little hay across the Gordon Savage land, and that if there was a gate across the north end of Gordon's land it was open.

Another witness testified that he helped Emmett Savage thresh one fall and they hauled the grain over the alleged easement to his home, and that he did not notice any gate.

Nielsen in his own behalf testified to a conversation with Emmett Savage in which Emmett allegedly told him that the road was in existence before Gordon was born, that he had used it all the time and that he thought nothing would be said about it. (Objected to.)

■

The only testimony relative to the use of way prior to 1936, other than that set out above, comes from Emmett Savage, testifying for the plaintiff.

It is earnestly contended by the respondent, citing 17 Am. Jur. 981, that he has shown sufficient to shift the burden to the appellant to show that the use was permissive.

Let us now examine that testimony:

Emmett Savage testified that he traveled on the road in question; that he used it to haul grain and hay out of his own land; that he did not use it to drive cattle; that he knew he had no right of way and that it was private property which he traveled with the understanding that it was a private road and respected it as such; that when he purchased the adjoining property he discussed the way but that he knew it wasn't his and he claimed no right of way or other claim only that he could travel over it; that he discussed getting a right of way with Gordon when Gordon bought the Albert Savage land and Gordon turned him down; that he put in the bridge now in use after the Hyrum Canal was put through and that he got the money from the Bureau of Reclamation and that he told them he had a right of way; that Nielsen never asked about a right of way and that he, Emmett, never considered the matter of how Nielsen would enter the land; that he used a crossing onto Gordon's land at a point along the north end of his own land more than he did a crossing where the bridge now is but that when the Reclamation Bureau would give him only money for one bridge he elected to place it where it now is; that he did not recall any conversation such as testified to by Nielsen; that he only claimed the right to use the road, and that he claimed the right by reason of permission.

It is apparent from this testimony that the use began as permissive use and was used in acknowledgment of a superior right and title first in the father, Albert Savage, and later in the brother, Gordon Savage. In short, then, the facts have put this case within the rule set

out in *Jensen* v. *Gerrard,* supra, where it was said [85 Utah 481, 39 P. 2d 1073]:

"A twenty-year use alone of a way is not sufficient to establish an easement. Mere use of a roadway opened by a landowner for his own purposes will be presumed permissive. An antagonistic or adverse use of a way cannot spring from a permissive use. A prescriptive title must be acquired adversely. It cannot be adverse when it rests upon a license or mere neighborly accommodation. Adverse user is the antithesis of permissive user. If the use is accompanied by any recognition in express terms or by implication of a right in the landowner to stop such use now or at some time in the future, the use is not adverse."

See also: *Reese Howell Co.* v. *Brown,* 48 Utah 142, 158 P. 684.

Of course, it is possible for a use which starts out permissive to become adverse, after which the prescriptive period will run. *Bowers* v. *Gilbert,* 63 Utah 245, 224 P. 881; *Holm* v. *Davis,* 41 Utah 200, 125 P. 403, 44 L. R. A., N. S., 89; *Jensen* v. *Gerrard,* supra, 19 C. J. S. Corporations, § 1210, page 889, note 89.

The point is, that where the use begins as permissive it is incumbent upon the party asserting that it has afterward become adverse to show at what point this occurred, in order to show a twenty year hostile period. This is in conformity with the general rule as previously announced. We are not justified in conjecturing as to when or if such a hostile period began. This does not conflict with *Zollinger* v. *Frank,* 110 Utah 514, 175 P. 2d 714, 170 A. L. R. 770.

There is no evidence for the defendant which shows that such an adverse use took place, except possibly the statement made by Emmett Savage to the Bureau of Reclamation in 1935 that he had a right of way and the testimony of the defendant himself as to the conversation with Emmett Savage:

"I asked him about the road that goes across the bottom end of it, Gordon's and he said 'That road was before Gordon was born and I

have traveled it all the time and don't think anything will be said about it' ".

(Objected to by appellant as hearsay; an objection we think well taken) which was denied by Emmett:

"No sir, I don't recollect anything like that."

It seems quite apparent, therefore, that the defendant has failed to establish an adverse use for the prescriptive period.

The findings and decree of the trial court cannot be sustained on the facts and evidence adduced and must be set aside. The lower court should pass upon the question of whether or not a way of necessity exists.

There were other errors relating to the width of the easement and the uses to which it had been put during the alleged prescriptive period and the location of such easement and extent of it if a way of necessity is found to exist, but in view of the holding that the evidence is not sufficient to sustain the judgment it is unnecessary to consider these errors further at this time. The question of the plaintiff's right to recover damages for the gravel placed on his land is contingent upon the findings relative to a way of necessity.

The trial court made no finding as to a way of necessity, and we are unable to ascertain what his attitude and opinion was as to this matter, he having heard the testimony and observed the witnesses. The state of the record is such as to a way of necessity that we are unable to determine the question at this time. We are left in doubt as to whether the road on the west of the Nielsen property is a public or private road; and if private, if Nielsen has the right to use it by virtue of similar use and right of use in his remote grantor. Also, testimony as to the cost and installation difficulties and efficacy of a bridge over the Wellsville Canal, leaves these matters in doubt and in such a state that we are unable to determine them. A further matter which must be decided, if a way of necessity is found to exist, and one upon

which practically no testimony was taken, is that of where the way of necessity is to be located. Use of the forty rods from all that appears is a matter of great convenience rather than reasonably necessary. No justification for use of the entire forty rods appears to have been made. There also remains to be considered the question of width of the easement if a way of necessity is found to exist. The testimony adduced does not seem to support a finding that it is, or should be twenty feet in width.

The judgment is set aside, and the case remanded with instructions to the trial court to hold such further proceedings as may be necessary to correct the errors as set out above. Costs to the appellant.

McDONOUGH, C. J., and WADE, and WOLFE, JJ., concur.

LATIMER, Justice.

I concur in the result. I believe it unnecessary to discuss the question of an easement by implication, inasmuch as the trial judge made no findings on that issue. We should avoid passing gratuitously on an issue that should be determined by the trial judge without interference on our part.

In the *Zollinger* v. *Frank* case, 110 Utah 514, 175 P. 2d 714, 716, 170 A. L. R. 770, the following principle of law was announced by this court:

"We think the better rule is that described as the prevailing rule in the above quotation. That is, where a claimant has shown an open and continuous use of the land for the prescriptive period (20 years in Utah) the use will be presumed to have been against the owner and the owner of the servient estate to prevent the prescriptive easement from arising has the burden of showing that the use was under him instead of against him. This rule was mentioned in the recent case of *Big Cottonwood Tanner Ditch Co.* v. *Moyle*, [109] Utah [197], 159 P. 2d 596, (on rehearing) [109 Utah 213], 174 P. 2d 148, 155 [172

A. L. R. 175], where it was said: 'It is true that to establish an easement the use must be notorious and continuous and on this adverseness—that is, holding against the owner—will be presumed.' "

See also *Northwest Cities Gas Co.* v. *Western Fuel Co.*, 13 Wash. 2d 75, 123, P. 2d 771; *Eagle Rock Corporation* v. *Idamont Hotel Co.*, 59 Idaho 413, 85 P. 2d 242; *Fleming* v. *Howard*, 150 Cal. 28, 87 P. 908; *Stetson* v. *Youngquist*, 76 Mont. 600, 248 P. 196.

"In this case Zollinger shows and the court found an open and continuous use for the prescriptive period. The presumption that the use was against the landowner therefore arises. \* \* \*"

In this case there was evidence of an open and continuous use of the land for the prescriptive period. However, the evidence indicated that up until 1930 the use of the land for right of way purposes by Emmett Savage, defendant's immediate predecessor, was by permission of Albert Savage, the father. In 1930 the father, who was the original owner of both pieces, sold the east piece to the plaintiff, Gordon Savage. At that time, Emmett Savage tried to get a right of way from his brother Gordon, but this request was refused. Emmett, in spite of this refusal, continued to use the right of way. From the testimony in the record, it can be fairly inferred that from the time Emmett's request was refused until 1946, the use of the land was against and not under the owner's permission. Were it not for the fact that the time element is too short to permit the use to ripen into a right, I would affirm the judgment of the trial court.