354 P.2d 852

**Frank D. WATKINS and Venia Watkins, Plaintiffs and Appellants,**

v.

**Glen M. SIMONDS and Beverly J. Simonds, Defendants and Respondents.**

**No. 9131.**

Supreme Court of Utah.

Aug. 15, 1960.

---

Gordon A. Madsen, Anderson, Jardine & Madsen, Salt Lake City, for appellant.

Sumner J. Hatch, Salt Lake City, for respondent.

WAHLQUIST, District Judge.

This is an appeal from summary judgment granted in the court below in favor of the defendants and respondents. For the purpose of considering whether or not summary judgment should have been granted, this court accepts all of the plaintiffs' (the appellants) allegations made below as facts.

All of the land in question was owned by a farmer, Wilford Seequist, who subdivided it. The area now known as Block 2 of Holiday Heights Plat "A" Subdivision in Salt Lake County, had been farmed for over 35 years and the irrigation water had

run as shown by the line labeled ABCDE on the drawing below. On the 15th day of December, 1950, Seequist transferred lot 6 to plaintiffs predecessor in interest.

Some time during the season of 1950 the flow of water was changed from the path indicated by the line labeled ABCDE to the path labeled AFGHIDC. There is no allegation as to whether this change took place before or after December 15, 1950. In this climate, it is improbable that anyone would change the flow of irrigation water after the middle of December, therefore, the natural assumption can only be the plaintiffs were alleging the flow of water had been changed to the second route before Seequist parted with the title to lot 6, the one purchased by the plaintiffs' predecessor in interest. The water continued to flow in this second route until after lot 3 was sold to defendants' predecessor in interest. It continued to so flow until about 1956 when the defendants filled up a part of the ditch marked HID and the water was rerouted to the path marked AFGJEDC. It continued to flow in that path for some seasons.

Some time later one of the defendants' children, with an air rifle, shot one of the plaintiffs' windows. Hard feelings developed over payment for the window. The plaintiffs allege that defendants spitefully filled in the route labeled ED where it crosses the rear of lot three. Plaintiffs sue for injunctive relief, compensatory damages, and punitive damages. Summary judgment was granted against all these contentions. We find that the court erred.

■ The plaintiffs' amended complaint was obviously constructed to fit the principle of law enunciated in Adamson v. Brockbank and others, 112 Utah 52, 185 P.

2d 264. That case adopts the principles stated in Restatement of Law on Real Property, Section 476, found on page 2978:

"An easement created by implication arises as an inference of the intention of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than the language of the conveyance. To draw the inference of intention from such circumstances, they (the circumstances) must be or must be assumed to be within the knowledge of the parties. The inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves."

The plaintiffs have alleged that at the time their predecessor in interest purchased "lot 6" from Wilford Seequist, it also purchased two shares of stock in an irrigation company to be used in conjunction with lot 6. They also allege that Wilford Seequist knew that said two shares of irrigation water was to be used on lot 6 and in fact sold the water for that specific purpose. While they do not specify in their complaint or amended complaint whether the ditch marked ABCDE, or the ditch marked AFGHIDCB, was the one then in use, they do allege a ditch on the land was then openly in use. Of course circumstances of the sale taking place December 15, 1950 strongly suggest the ditch AFGHID-CB was open on the land and the one used. They allege that it was the obvious intent of all concerned, at the time of this purchase, that an easement would exist to get this water to lot 6 over the route that was then in use.

The plaintiffs asserted, in their brief, at the time of the argument on the motion for summary judgment, that the route AFGHIDCB was the one in use at the time of the first sale of lot 3 to the defendants' separate predecessor. It would actually make no difference whether the water was at the time of the purchase of lot 6 flowing in route ABCDE or AFGJHIDCB. The remaining lands held by the defendants' predecessor in interest would be the burdened land and the owner would have had a right to change the route of the water so long as an equal accessibility to the water was available to "lot 6." Such change would become binding on all concerned if agreed to either expressly or impliedly.

The same is true as to the changing of the water from the route AFGHIDCB to the route AFGJEDCB. The owner of lot 6 would be in no position to complain so long as the delivery was equal, no additional maintenance burden results or rights of third persons intervened.

The plaintiffs have argued throughout the proceedings the application of the "Restatement" and that the Adamson v. Brockbank case is authority for the relief asked, on proof of the facts they allege.

In Adamson v. Brockbank, 112 Utah 52, 185 P.2d 264, 272, we said:

"The elements essential to constitute an easement by severance are: (1) Unity of title followed by severance; (2) That at the time of the severance the servitude was apparent, obvious, and visible; (3) That the easement is reasonably necessary to the enjoyment of the dominant estate; and (4) It must usually be continuous and self-acting, as distinguished from one used only from time to time when occasion arises."

Plaintiffs have carefully alleged, in their amended complaint, facts to fit the Adamson v. Brockbank case. If plaintiffs succeed in establishing these allegations they will be entitled to relief.

It is unnecessary to discuss the remaining contentions of the plaintiffs. However, this court may assist the court below.

At the time the subdivision was platted and in all deeds, thereafter, Wilford Seequist, the farmer, placed a "utility easement" over the back five feet of all lots. One of plaintiffs' contentions is that this reserving of an easement referred to in the deeds as a "utility easement" includes an easement for running of irrigation water. This may possibly be true as to irrigation waters placed in culverts or pipe. We agree with the trial court that a "utility easement" as such, in a residential subdivision, under these facts, does not grant an easement for an open irrigation ditch.

Plaintiffs also contend that there exists reciprocal easements. They contend that there was unquestionably an easement for the running of water over "lot 6" to "lot 3," and there would be in equity a recipocal easement to run water over lot 3 to reach lot 6. This contention was correctly rejected. The fact that a lower owner may have established a right to run water in a ditch over the land of an upper owner would not necessarily mean that the upper owner could reverse the flow and run water in the same ditch over the lower owner's property, even where that is physically possible. The right to run water through such a ditch depends upon whether it had in fact been established under the requirements of the law.

Plaintiffs also contend in the alternative, not in their complaint or amended complaint but in their memorandum in the lower court, that they have a right to condemn an easement for the flow of water across lot 3.

They desire the route as marked AFGJ-EDC. The right of private citizens, in a proper case, to condemn an irrigation easement is recognized by statute. See UCA 1953, Sec. 78-34-1(5).

Inasmuch as plaintiffs' intent in this matter was made known to the trial court and this court, their desire to yet amend and properly plead a condemnation action results in no surprise or substantial prejudices to the defendants. The issues are related to the allegations of "easement by implication," so it could be joined in the same action. However, the trial court might desire to defer the actual trial on the condemnation issues until the other issues are settled.

Summary judgment as a remedy should be granted with great caution. Care should be exercised so as not to cloud the visibility as to just what issues are alive between parties. Summary judgment, as was granted in this case, may appear at first to be with prejudice as to the plaintiffs' alternative desire to acquire by condemnation, yet facts on which such a right to condemn the path marked GJEDCB would depend on are unsettled and contested. Actually, the plaintiffs have not yet asked that their alternative desire be formally considered. Memorandum decisions by the trial court can often eliminate the consumption of time involved in litigation.

Case is remanded to the court below for action consistent with this opinion. Cost to the appellant.

CROCKETT, C. J., and WADE, McDONOUGH and CALLISTER, JJ.

HENRIOD, J., having disqualified himself, did not participate herein.