Dianna OVARD and Paul J. Ovard, her
husband, Plaintiffs and Respondents,

v.

Charles M. CANNON, Defendant
and Appellant.

No. 16050.

Supreme Court of Utah.

Sept. 19, 1979.

Paul B. Cannon, Salt Lake City, for defendant and appellant.

Ray M. Harding, American Fork, for plaintiffs and respondents.

CROCKETT, Chief Justice:

Plaintiffs Ovard sued to compel defendant Cannon to remove obstructions he had placed in an irrigation ditch which ran across his land to plaintiffs' property. Defendant denied plaintiffs' right to a ditch easement; and as a separate proposition, counterclaimed that plaintiffs' boundary encroached upon defendant's land to the extent of 10.75 feet for its entire length of 225 feet.

■ Upon a trial to the court, it made findings and entered judgment in favor of the plaintiffs on both propositions:[1] that they had an easement for the ditch; and that the defendant's counterclaim as to misplaced boundary was without merit. Defendant appeals.

The plaintiffs' property is at 1535 West on 6235 South Street in Salt Lake County. It is 96 feet wide, fronting on that street and runs 225 feet deep (southward). Properties acquired by Mr. Cannon border plaintiffs' tract on the west and the south. Sparing details of steps in their chains of title, both parties derived their ownership from a common source, William E. Parker and his successors. The plaintiffs' tract is that part of the original Parker land which remained in the Parker family and since 1952 has been fenced and used as presently occupied by plaintiffs. In the conveyance to Mr. Cannon's predecessor there was reserved an easement for an irrigation ditch which runs from the southwest corner of plaintiffs' land westward 96.5 feet over defendant Cannon's land, where it there connects with a ditch running southward 600 feet over Cannon's property. Through these ditches plaintiffs (and their predecessors) obtain water to irrigate their land. The controversy here arises because of defendant Cannon's dispute of the plaintiffs' claim of an easement and the right to so use that ditch.

In support of the trial court's determination that the plaintiffs had an easement in the above-mentioned ditch for the purpose of conveying water to their property, reliance is placed on the doctrine of easement acquired by implication or necessity.

■ It has previously been recognized by this Court that such an easement may be found when these elements are present: a previous unity of title, followed by severance; that at the time of the severance the servitude was so plainly apparent that any prudent observer should have been aware of it; that the easement is reasonably necessary to the use and enjoyment of the dominant estate; and it must have been continuous, at least in the sense that it is used by the possessor whenever he desires.[2]

Also to be considered in conjunction with the trial court's finding that plaintiffs had an easement by implication or necessity is the fact that, upon the basis of substantial supporting evidence, the trial court made this finding:

That for more than THIRTY (30) years prior to the commencement of this action, water was conveyed through the ditch described above . . . for the purpose of watering the property now owned by the Plaintiffs and previously owned by Glen Parker.

■ From what has been said above, and the evidence bearing on the issue, it is our conclusion that the trial court was justified in finding the easement in the ditch in question in favor of the plaintiffs.[3]

## COUNTERCLAIM AS TO MISPLACED BOUNDARY

Defendant Cannon's assertion that the boundary fence between his property and that of plaintiffs' is 10.75 feet too far west and thus encroaches upon his land to that extent is based upon a survey which he caused to be made by a surveyor, Mr. Scott Horton.

The evidence, and the finding of the trial court, is that when Glen Parker sold the tract now owned by defendant Cannon to

1. Under the standard rule of review, we survey the evidence and the reasonable inferences that may be drawn therefrom in the light favorable to the trial court's findings and in support of his judgment. See *Charlton v. Hackett,* 11 Utah 2d 389, 360 P.2d 176 (1961).

2. See *Adamson v. Brockbank,* 112 Utah 52, 185 P.2d 264, 272 (1947); *Watkins v. Simonds,* 11 Utah 2d 46, 354 P.2d 852 (1960); *Morris v. Blunt,* 49 Utah 243, 161 P. 1127, 1132 (1916);

*Savage v. Nielson,* 114 Utah 22, 31, 197 P.2d 117 (1948); *Chournos v. Alkema,* 27 Utah 2d 244, 247, 494 P.2d 950 (1972).

3. That the appellate court should affirm the judgment if it is sustainable on any legal ground or theory supported in the record, see *Limb v. Federated Milk Producers Assn.,* 23 Utah 2d 222, 461 P.2d 290 (1969).

Theron Briggs in July of 1952, they measured the land and built a fence along the common boundary, the west boundary of the Parker tract and the east boundary of the Briggs tract, which is the boundary Mr. Cannon now claims should be 10.75 feet to the east. It is significant that it appears to be undisputed, and the trial court found, that that boundary has continued to so exist from that time until the present, a period of more than 25 years.

In support of the view of the trial court that he was not convinced by the defendant's evidence on his counterclaim, it is deemed not amiss to refer to certain frailties in Mr. Horton's testimony. He did not measure the distance from plaintiffs' northwest corner to their northeast corner to determine if they had acquired 107 feet, that is, 10 feet more than the 97 foot wide Parker tract which was deeded to them. Nor did he measure the width of the defendant's property lying west of the fence, to determine if the land occupied by the defendant was 196.5 feet as conveyed to him in his deeds, which left him with only 186.5 feet in width. From the plat introduced in evidence it appears that defendant got his 196.5 feet. It is also to be noted that Mr. Horton's survey was measured by him from a monument which he stated was in the center of Redwood Road and which was marked as the N¼ corner of Section 22. No evidence was offered as to when this monument was placed or by whom.

It is true that in cases of equity this Court *may* weigh the evidence and determine the facts.[4] However, it is well established in our decisional law that due to the advantaged position of the trial court, there is indulged a presumption of correctness of the findings and judgment; and that where the evidence may conflict we do not upset the lower court's findings unless the evidence clearly preponderates against them.[5]

Upon the basis of the evidence and applicable rules of law, it appears that the trial court was justified in its findings and judgment that the plaintiffs had an easement in and a right to use the irrigation ditches referred to, and in his being unpersuaded that the plaintiffs' boundary encroached upon the defendant's property.

Other claims of error have been examined and are deemed to be without merit.

Affirmed. Costs to plaintiffs (respondents).

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

4. Utah Const., Art. VIII, Sec. 9, providing for appeals says: ". . . in equity cases the appeal may be on questions of both law and fact; . . ."; *Peterson v. Peterson,* 112 Utah 554, 190 P.2d 135 (1948).

5. *Barker v. Dunham,* 9 Utah 2d 244, 342 P.2d 867 (1959); *Del Porto v. Nicolo,* 27 Utah 2d 286, 495 P.2d 811 (1972).