IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| The Abraham & Associates Trust and Michael Robert Barker, Trustee, | ) ) ) | OPINION |
| | | Case No. 20110052-CA |
| Plaintiffs and Appellants, | ) ) | |
| v. | ) ) | F I L E D (June 21, 2012) |
| James M. Park, Tori L. Park, Dennis Carr, and Donette Carr, | ) ) ) ) | 2012 UT App 173 |
| Defendants and Appellees. | ) ) | |

-----

Sixth District, Kanab Department, 060600022
The Honorable Marvin Bagley

Attorneys:     Vincent C. Rampton, Salt Lake City, for Appellants
               Michael W. Park, St. George, for Appellees

-----

Before Judges Orme, Thorne, and Roth.

ORME, Judge:

¶1     This dispute arises between landowners in Kane County, The Abraham &
Associates Trust (Abraham) and James M. and Tori L. Park.[1] Abraham appeals the trial
court's decision denying it an easement by necessity across the Parks' land, which abuts

---

[1]Dennis and Donette Carr, other property owners in the area, were originally
named as defendants in this lawsuit but stipulated to the existence of an easement over
their property in favor of Abraham and thus are no longer part of this dispute.

a county road, so that Abraham could access the road from its "landlocked" parcel. We affirm.

## BACKGROUND

¶2      A brief history of the relevant conveyances is necessary to understanding our decision. In 1964, Bertrand and Idona Smith owned a tract of land in Kane County, with a county road running north and south along the eastern boundary of the property. In that year, through two simultaneously executed deeds, the Smiths conveyed the northern half and the southwest quadrant of their property to RKR Construction Company, retaining the southeast quadrant for themselves.[2] The deed conveying the northern property was made subject to a thirty-foot right-of-way from the county road to the east, across the southern portion of that property. RKR subsequently conveyed its interest in the southwest quadrant to three individuals, as tenants in common. Those individuals ultimately divided the property into three separate parallel parcels of approximately the same size, granting one another reciprocal easements along the northern boundary of the properties. In 1970, the owner of the parcel immediately adjacent to the Smiths' property purchased an easement via a road across the northern portion of the Smiths' land, which road connects to the county road. This easement was expressly limited to use by the family and invitees of the easement purchaser and subsequent owners of that parcel.

¶3      Over the next few decades, ownership of the parcels below the southern boundary of the RKR property, other than the western-most parcel in the southwest quadrant, changed multiple times. The western-most parcel remains with the original post-RKR grantee, Gary Watson. Since 2006, the ownership of the property has remained as follows: the northern parcel is still owned by RKR; the southeast quadrant previously retained by the Smiths is now owned by the Parks; the property immediately to the west of the Parks' property is owned by the Carrs; immediately west of the Carrs' parcel is the Abraham property; and immediately west of the Abraham parcel is the Watson property.

---

[2]We use these terms loosely to simplify our explanation. The sizes of the three parcels only roughly warrant these characterizations, mathematically speaking.

¶4     The pivotal dispute between Abraham and the Parks concerns Abraham's right to use the road over the northern portion of the Parks' property, which is used by the Parks and the Carrs (pursuant to the easement purchase made by the Carrs' predecessor) to access the county road. The parties do not dispute that Abraham has a right to use the easement along the northern portion of the Carrs' property, pursuant to the earlier reciprocal exchange of easements among the owners of the parcels in the southwest quadrant.

¶5     Abraham brought this lawsuit, seeking a determination that it is entitled to an easement by necessity extending from the northeast edge of the Carrs' parcel, across the Parks' property, to the county road. Abraham and the Parks filed cross-motions for summary judgment. The trial court denied both motions, determining that a question of fact existed as to whether there was a "reasonable necessity" warranting an easement across the Parks' property for Abraham's benefit. The matter was eventually tried to the court.

¶6     At trial, Abraham argued that because its property is landlocked, an easement over the Parks' property is necessary to obtain access to the county road. The Parks contended that there is no such necessity because the right-of-way reserved in the original conveyance of the property to RKR provides Abraham access to the county road via the express easement along the southern border of the northern parcel still owned by RKR.

¶7     There was considerable disagreement about the easement over RKR's property. For one thing, there is no road that follows the easement described in RKR's deed. There is a road, of sorts, that crosses RKR's property and extends to the county road, although it runs north of the described easement. Abraham conceded that it could reach the county road in this manner, but it insists that the route is dangerous. And several individuals' testimony suggested that parts of the road were nearly impassable. On the other hand, some testimony indicated that the road was usable. In contrast, the road along the northern portion of the Parks' property is in relatively good condition, although in need of some repair.[3]

_____

[3]Abraham claimed at trial that a search of the title records of the properties revealed no record right of access to the Abraham property from the county road at any time after the Smiths conveyed the property to RKR. This revelation is not surprising,

(continued...)

¶8     The trial court ultimately determined that Abraham failed to establish the right to an easement by necessity because it failed to demonstrate the requisite elements.  The court explained that it would not find an easement by necessity unless it "clearly appears that the parties to the conveyance did intend such an easement."

¶9     Abraham filed a motion for a new trial, which the court denied as untimely.[4] Abraham subsequently appealed to the Utah Supreme Court, which transferred the appeal to this court.  *See* Utah Code Ann. § 78A-4-103 (Supp. 2011).


ISSUES AND STANDARDS OF REVIEW

¶10     Abraham appeals the trial court's denial of an easement by necessity extending from Abraham's property over the existing road on the Parks' property to the county road.  Abraham also appeals the trial court's finding that the predecessors in interest of the parties intended to have the owners of the Abraham property use the reserved

---

[3](...continued)
and is no doubt explained by the fact that although the deed to RKR of the northern property reserved an easement along its southern border, RKR's deed of the southwest quadrant to the initial tenants in common did not convey to them corresponding rights in that easement.

[4]While the error is inconsequential given our disposition of the primary issues on appeal, the trial court's determination that the motion was untimely is incorrect.  Rule 59(b) of the Utah Rules of Civil Procedure requires that "[a] motion for a new trial shall be *served* not later than 10 days after the entry of judgment."  Utah R. Civ. P. 59(b) (emphasis added).  Regarding, inter alia, deadlines for serving motions, rule 6(a) notes that "[w]hen the period of time prescribed or allowed . . . is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."  *Id.* R. 6(a).  The court entered judgment on Wednesday April 21, 2010.  Excluding Saturdays and Sundays, ten days after that date was Wednesday May 5, 2010, meaning that Abraham had until that day to serve its motion for a new trial.  Abraham mailed notice on Monday May 3.  Because service is effective upon mailing per rule 5 of the Utah Rules of Civil Procedure, Abraham served its motion for a new trial on May 3, two days before its deadline expired.  *See id*. R. 5(b)(1)(B).

right-of-way along the southern boundary of RKR's northern property in order to reach the county road.

¶11   We review "[f]indings of fact . . . under the clearly erroneous standard . . . . [T]o find clear error, [we] must decide that the factual findings made by the trial court are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994).  The trial court's determination that no easement by necessity exists presents a question of law, which we review for correctness, "according the trial court no particular deference." *Orton v. Carter*, 970 P.2d 1254, 1256 (Utah 1998).


ANALYSIS

I.  Easement By Necessity

¶12   Abraham asserts that because its parcel is completely landlocked, it should be granted an easement by necessity via the existing road that runs across the Parks' land. The Utah Supreme Court addressed the requirements for an easement by necessity in the seminal case of *Tschaggeny v. Union Pacific Land Resources Corp.*, 555 P.2d 277 (Utah 1976).  The Court articulated the four requirements as follows:

> (1)  Unity of title followed by severance;
>
> (2)  That at the time of the severance the servitude was apparent, obvious, and visible;
>
> (3)  That the easement is reasonably necessary to the enjoyment of the dominant estate; and
>
> (4)  It must usually be continuous and self-acting,[5] as distinguished from one used only from time to time when occasion arises.

---

[5]The term "self-acting" was used originally in *Morris v. Blunt*, 161 P. 1127, 1132 (Utah 1916).  In context, we suspect the term means that the route must be reasonably available and accessible without the need for structural alterations or significant coordination among the parties.

*Id.* at 280 (quoting *Morris v. Blunt*, 161 P. 1127, 1132 (Utah 1916)) (minor changes in capitalization and structure as per *Tschaggeny*; internal quotation marks omitted). Further, "'[t]he physical location of the other tract [must be] such that it is not reasonably accessible without crossing the tract conveyed away.'" *Id.* (quoting *Savage v. Nielsen*, 197 P.2d 117, 121–22 (Utah 1948)). *Tschaggeny* explained that where a property owner "'sells the tract which is thus surrounded without mention of a means of ingress and egress it is presumed that he intended to create a servient estate *in himself* to the extent of a right of way in favor of the other tract of land.'" *Id.* (quoting *Savage,* 197 P.2d at 122) (emphasis added). Key to this analysis is the proper identification of which conveyance created the claimed necessity. That is, we must look for the exact moment at which a loss of unity of property ownership landlocked one or more of the just-divided parcels of land. Further, a landlocked property owner with no other means of access to the outside world does not have an automatic right to an easement by necessity across the most *convenient* parcel to invade, but across "the tract conveyed away." *Savage*, 197 P.2d at 122. Thus, once the conveyance that landlocked the property is identified, the proper course, if the doctrine of easement by necessity is to be employed, is to find an avenue for relief through the property from which the landlocked parcel was separated. *See Tschaggeny*, 555 P.2d at 280.

¶13   Here, the entire tract of land in question was originally owned by the Smiths. In two separate but simultaneously executed deeds, they sold RKR the northern half of their property, which RKR still owns, and the southwest quadrant, of which Abraham's parcel constitutes the middle third. At the time, the Smiths did not "sell[ a] tract which [wa]s thus surrounded" and, therefore, did not create circumstances that might justify an easement by necessity. *See id.* Albeit via two deeds, the Smiths conveyed three-fourths of their property to RKR. The property then owned by RKR was not landlocked; it abutted the county road.

¶14   Abraham seizes upon the fact that the Smiths used two deeds to convey to RKR, contending that because the initially conveyed parcels were described in two separate deeds, the parcels were severed from one another when the Smiths conveyed them, thereby effectively landlocking the southwest quadrant. However, but for RKR's subsequent conveyance of the southwest quadrant to the three tenants in common, that property would not have been landlocked; it would have remained part of RKR's acreage fronting the county road. In short, it was RKR's subsequent conveyance of the southwest quadrant to the tenants in common that severed the unity of title—not the Smiths' original conveyance to RKR.

¶15     An easement by necessity requires that "'all the property is once owned by a single person'" who then "'divides it into two tracts and conveys away one tract.'" *Id.* (quoting *Savage*, 197 P.2d at 121). While it is true that the Smiths conveyed the land as two identifiable parcels when it transferred title to RKR, the Smiths granted all of the transferred property to one entity—RKR. Because *Tschaggeny* requires common ownership of two parcels followed by a division of ownership, *see id.*, Abraham cannot establish an easement by necessity enforceable against the Smiths or the Smiths' successors in interest, the Parks. If Abraham's property is landlocked, it is because of RKR's conveyance, not the Smiths', and any easement by necessity would be imposed across RKR's land, not the property owned by the Parks as the Smiths' successors in interest.[6]

¶16     The relevant severance of unity of title, then, is that which occurred with the conveyance by RKR of the southwest quadrant, arguably landlocking the property that included what would become Abraham's parcel. As this is the relevant severance for purposes of an easement by necessity, RKR's northern property, which borders both Abraham's parcel and the county road, is therefore the property to which Abraham must look for any easement by necessity to which it might be entitled. Consequently, the Parks––whose property is entirely unrelated to the relevant severance––are not

---

[6]No one would contend that RKR could have received an easement by necessity across the Smiths' land because its southwest parcel was "landlocked" by its own adjacent northern property. RKR's southwestern parcel was not landlocked at that time in a legal sense because RKR's contiguous property, comprised of the northern half and southwest fourth of what was once the Smiths' large holding, abutted a long stretch of county road.

Even if we were to conclude that the parcels were actually severed from one another when the Smiths conveyed them by two separate deeds to a single owner, the severance would have lasted less than a nanosecond. "[W]hen [a] common grantor acquire[s] both parcels, the titles merge[]." *Clair W. & Gladys Judd Family Ltd. P'ship v. Hutchings*, 797 P.2d 1088, 1095 (Utah 1990). That said, we note that the doctrine of merger is probably not necessary to resolve Abraham's claim here. The doctrine of merger typically functions in a situation where two adjacent properties owned by different owners later become owned by a single owner. Here, the Smiths owned all of the land and deeded the relevant portions to RKR. The northern and southwestern parcels were, thus, not owned by different owners until after the southwest quadrant was conveyed by RKR.

required to allow access to landowners whose land sits two parcels away and who have other legal avenues to pursue.[7]

## II. RKR's Reserved Right-of-Way

¶17    Even if the original conveyances by the Smiths were viewed as landlocking what would eventually become Abraham's parcel, the propriety of an easement by necessity over the Parks' property would likely be vitiated by the express right-of-way articulated in the deed to RKR of its northern property. In *Potter v. Chadaz*, 1999 UT App 95, 977 P.2d 533, we discussed *Tschaggeny* and clarified that no easement by necessity existed in a case where there was "at least one . . . access route[] to [the] property" that the party seeking the easement could legally use. *Potter*, 1999 UT App 95, ¶ 18. Further, in *Tschaggeny*, the Utah Supreme Court held that an easement by necessity does not exist for a landlocked parcel if "the instrument of conveyance specifically provides for a way over the parcel not landlocked." *Tschaggeny*, 555 P.2d at 281. Thus, while intent is irrelevant to *establishment* of an easement by necessity, *see supra* note 7, an expressly stated means by which otherwise landlocked property owners are intended to access the outside world typically precludes the imposition of an easement by necessity.

¶18    It looks as though when the Smiths deeded the two parcels of land to RKR that they intended that anyone to whom RKR later conveyed an interest in the southwest quadrant would access the county road via the right-of-way expressly reserved in the deed to the northern property. The use of separate conveyances appears to be no more than a matter of convenience. The Smiths clearly intended to grant a large portion of their property to RKR. It seems likely that the Smiths were aware that RKR intended to then immediately convey its interest in the southwest quadrant, and so the Smiths, presumably at the request of RKR, conveyed the property in two parcels, mentioning the express right-of-way in the deed to the property that would be burdened by the right-of-way. The expressly reserved right-of-way in the conveyance of the property to

---

[7]We note that the trial court was incorrect insofar as it focused on a lack of intent in considering the claimed easement by necessity. Intent is not a requirement for an easement by necessity, which is triggered not by volition but, as its apt title suggests, by necessity. Nonetheless, as we have explained, Abraham fails to meet the actual requirements for an easement by necessity over the Parks' land, and thus, the trial court was correct to deny Abraham's requested relief, albeit for somewhat different reasons than those it articulated.

RKR shows the intent of the Smiths (and presumably of RKR) to have RKR's northern property host the route to the county road for any subsequent purchasers of parcels in the southwest quadrant.

CONCLUSION

¶19    We hold that the relevant severance for evaluating a possible easement by necessity occurred when RKR deeded away the southwest quadrant, and therefore, if Abraham wants to seek such an easement, it must look to do so across RKR's property. Further, we conclude that the right-of-way articulated in the deed of the northern parcel to RKR demonstrates the intent of the parties to have subsequent owners of the southwest quadrant gain access to the county road by way of the southernmost footage of RKR's northern property.

¶20    Affirmed.

_____
Gregory K. Orme, Judge

-----

¶21    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Stephen L. Roth, Judge