318 P.2d 343

Brigham B. HARVEY and Ruth M. Harvey, Plaintiffs and Respondents,

v.

HAIGHTS BENCH IRRIGATION COMPANY, a Utah corporation, Defendant and Appellant.

No. 8631.

Supreme Court of Utah.

Nov. 13, 1957.

Gustin, Richards, Mattsson & Evans, Salt Lake City, for appellant.

Clyde & Mecham, Salt Lake City, for respondent.

WORTHEN, Justice.

Plaintiffs are owners of 35 acres of land' in Davis County, Utah. The property has never been cultivated or irrigated. Defendant for over forty years has maintained over and across the west and southwest portion of said land an irrigation ditch through. which it has conveyed water to its stockholders. In the fall of 1955 defendant improved the northerly portion of said ditch by cementing it for a distance of 750 feet.. The cement ditch is seven feet wide at the top, three feet deep, with sloping sides and. has a 14 inch flat bottom. Plaintiffs described the old ditch as being six to eight feet wide, about one and one-half to two feet deep; water from Farmington Canyon. flowed through the ditch from early April

until early July. Defendant's witnesses described the old ditch as being six to eight feet wide at the bottom and 10 to 12 feet at the top. The defendant's officers testified that it was required to use the type of construction that was used in order to obtain financial assistance from the Government. The plans and specifications were recommended by the Soil Conservation Service; in fact, the entire project was designed and supervised by the engineer for the Soil Conservation Service.

The record discloses that the defendant had entered into a contract with the Weber Basin Water Conservancy District for 1,-300 acre feet of water which defendant intended to put in the ditch each year as soon as the water from Farmington Canyon was no longer available.

There was testimony that the purpose of cementing the ditch was to conserve water by stopping seepage and to prevent flooding. It was not shown that defendant in the past had ever done anything to waterproof the ditch on plaintiffs' land. At any rate, defendant decided to waterproof the ditch and to make radical changes in its design before putting in the newly purchased water.

There is no dispute in the evidence as to the dimensions of the new ditch. No bridges were provided by defendant, although defendant's witness testified that an offer was made to construct a bridge across the canal.

In the fall of 1955 defendant, for the purpose of cementing the ditch, entered plaintiffs' land, took a bulldozer down the east bank on which oak trees and brush were growing and pushed all of the trees and brush over and left the same on plaintiffs' land. It was admitted by a witness for defendant that previously when the ditch had been cleaned there were only two places along the entire 750 foot bank on the east where you could get out on to the east bank with a team of horses because it was so heavily wooded. It was not disputed that in preparing to waterproof the ditch defendant cleared both banks of trees, shrubs and sand and gravel so that it could bring in its equipment, "our cement trucks and things like that—through, and it was necessary to have a roadway for them to travel on."

There was testimony that an officer of defendant told Mrs. Harvey that they wanted to do some work on the ditch; she testified that she was not advised of the work contemplated. Shortly thereafter Mr. Harvey saw men working on the ditch and he complained. He later met with the president of defendant company before the cement was laid and requested *that that type of ditch be not installed*. He also met with the board of defendant company and objected to the type of ditch being constructed and requested that they desist. The board refused his request, and he retained counsel, who, in writing, protested. Plain-

tiff stated at the meeting with the board that if they would cover the cement ditch, he would not object to the type of ditch. The defendant nevertheless installed the cement ditch described, left the debris scattered on the land and provided no bridge over the canal.

There was evidence that about a year earlier the defendant cemented a part of this canal some distance south of plaintiffs' land. That section had a flat bottom about 4 or 5 feet across and cement sides that were much shallower, to-wit: about 18 to 24 inches.

Plaintiffs instituted suit to enjoin the defendant from flowing water acquired from a new source through their irrigation ditch across plaintiffs' land and to enjoin defendant from maintaining the cement ditch on plaintiffs' land. Plaintiffs also asked for $10,000 actual damages and $5,000 punitive damages. The court denied plaintiffs' request for injunctive relief but submitted to the jury the question of plaintiffs' damages by reason of the improvement made by defendant and also the question of plaintiffs' right to punitive damages. The jury awarded plaintiffs $400 actual and $400 punitive damages.

Appellant irrigation company assigns error as follows:

"I. Plaintiff. [Sic] [defendant] had the Right to Use as Much Land on each Side of the Ditch as was Reasonably necessary to Maintain, Repair, Improve and Enjoy its Easements.

"II. The Question of Punitive Damages Should not have been submitted to the Jury.

"III. The Court erred in Instructing the Jury."

Plaintiffs cross-appealed, charging that the court erred in refusing to issue an injunction enjoining the defendant from placing water acquired from a different source in said ditch and in refusing to enjoin defendant from maintaining the cement ditch on plaintiffs' land.

Considering defendant's assignments of error, it should be remembered that defendant replaced the dirt ditch which was wide with shallow banks and a wide, flat bottom with a cement ditch with a very narrow bottom—14 inches—with high, steep, smooth, hard sides,—36 inches—and with a width on top of seven feet.

It requires no expert to delineate the disadvantages thus imposed upon the plaintiffs. The new cement ditch was much more hazardous for children, and it cut plaintiffs' land into two tracts and prevented livestock from going across. Mr. Harvey described the ditch as follows:

"Well, children and everything that there is goes into a ditch. If they should try to get a drink at them places, there is no banks to hold them

back. They're in on their head and they're in the ditch. And that's my objections. They're just a perfect trap when you run water into them, they're a hazard for anything else that comes up to them."

The plaintiffs alleged that defendant in changing the dirt canal to a cement canal removed trees and oak brush growing along the banks of said ditch and totally destroyed the same to a width of nearly 40 feet from the ditch and placed a wide roadway along the west bank of said ditch.

There was evidence that the trees and brush along the east bank had grown unmolested for 50 years and that until the fall of 1955 when defendant undertook to cement the canal that there was no roadway for vehicular traffic down either bank.

Defendant contends that what it did in bulldozing over the trees and brush on the east side of the ditch in order to make the improvements to the ditch was necessary and that it cannot be held liable in damages as long as what it did was reasonably necessary for the enjoyment of its easement and was an implied part of the easement. Appellant likewise contends that all that it did in waterproofing its ditch was but to exercise the implied grant from plaintiffs authorizing it to do whatever was required to conserve water so long as it was reasonably necessary to accomplish the desired result. Defendant quotes from the case of Big Cottonwood Tanner Ditch Co. v. Moyle.[1] Plaintiffs on the other hand contend that that case goes too far and urges us to disapprove of much of the language and limit the case as a precedent.

That case plagues us quite as much by what was said that was not necessary to the decision as by principles of law and rules of interpretation announced with a seeming failure to apply such rules and principles to the case.

At the outset it should be observed that that case and this case came before the court in different ways. In that case the easement owner sought to enjoin the landowners from preventing it from entering upon defendants' lands for the purpose of cementing and waterproofing its ditches. In this case the landowners sought to enjoin the ditch owner from flowing through its ditch water from a source never put in the ditch before and from a different watershed.

No opinion in the Big Cottonwood case (supra) obtained the concurrence of two other justices in support of its reasoning and cannot be said to represent the opinion of the majority of the members of the court.

Mr. Justice Wolfe observes in his opinion on rehearing that under the common law

1. 109 Utah 197, 159 P.2d 506, (Rehearing) 109 Utah 213, 174 P.2d 148, 151, 172 A.L.R. 175.

of England a prescriptive easement presumes a lost grant and to ascertain the terms of the grant the law looked to the nature of the use during the prescriptive period. It is then observed that "if incidental benefits accrued to the owner of the servient estate, it was presumed that *in the absence of said benefits* the owner of such estate *could and would have stopped the use before the prescriptive period had run.* Thus, if after the prescriptive period had run, *the benefits were cut off, the servient estate owner was permitted to restrain the use."* (Emphasis added)

Mr. Justice Wolfe further observed:

"We have in the past refused to follow the English common law where to do so would be contrary to the common interests if applied in this area."

Chief Justice Larson in that case urged that the fiction set up by the English common law of a lost grant as a ground for prescriptive rights should be utterly disregarded. That opinion remained the opinion of the Chief Justice only.

Mr. Justice Pratt declined to express an opinion on the question of presumption of a lost grant.

In that case as here the ditch company besides cementing the ditches proposed to make and made the channels narrow so that the water could course through in a swifter current.

Mr. Justice Wolfe used the following language:

" * * * The preponderance of the evidence on the point of what effect the proposed change of the ditches will have on the hazard to children is clearly in support of the lower court's finding that to change as proposed would result in materially increasing said hazard.

"Though the changing of the ditches as proposed would result in materially increasing the hazard and thus substantially depreciating the value of the servient estates would the proposed change if effected extend beyond the easement rights of the plaintiff? * *
*    *    *    *    *    *

"The additional burdens which the servient owner may enjoin or for which he may receive damages are those burdens over and above those embraced within the framework of the easement itself—not for additional burdens which may result from the easement owner exercising his right to make changes in his method of using the easement *which right was included in the* easement as originally acquired * * *

"What is a reasonable manner for the company to improve a particular ditch is a question of fact to be decided after considering location of the ditch,

the type and use of the property through which it flows, the amount of water it carries, the relative cost of the possible methods of waterproofing and all other facts and circumstances bearing on the question. * * *

" * * * The equities must be weighed. Each case must be decided on its own particular facts. In no case would the easement owner be allowed in improving his ditch to take more or different land from the servient estate than that used during the prescriptive period." (Emphasis added.)

Mr. Justice Wolfe further observed:

" * * * the common law of Utah presumes that at the time of this grant all parties concerned knowing of the arid nature of this country, contemplated that at some future time the owner of the water would be required by law to prevent, or, without coercion of law, would undertake to prevent wastage of water as the need arose for more efficient use of the limited water available."

In our opinion, it may or may not have been within the contemplation of the parties in the Big Cottonwood case, *that the water owner would at sometime in the future either be required by law to prevent, or, without coercion of law would undertake to prevent, wastage of water as the need arose for more efficient use of the limited water*

*available.* Probably if the owners of the servient estate in that case had realized that by permitting the ditch company to acquire a prescriptive easement which not only conferred certain advantages of the servient estate, but which was relatively free from hazard to children that they were granting to the ditch company the right to not only take away the advantages to the servient estate, but were charged with having agreed that the ditch company might construct another and different type of ditch imposing the additional burden of danger to children, without liability for damages, the owners of the servient estate would never have permitted the use of the ditch to ripen into a right.

██ Whether we accept the lost grant theory or base the right to make changes in the interest of conservation and public policy, the criterion to be applied, it appears to us, is to permit the ditch owner to make reasonable and necessary improved structures (not taking more or different land) in order to conserve the water without the necessity of instituting eminent domain proceedings but without being relieved of any actionable damages that may be suffered by the owner of the servient estate. Whether or not actionable damages result will be a fact question to be determined by the trier of the facts. But if in these situations the court can say, as in other actions for damages, that reasonable men could not disagree that the landowner had failed

to show damages then the question should be determined as a law question by the court.

In the Big Cottonwood case Mr. Justice Wolfe observed:

"Having decided that plaintiff's easement includes the right to improve the ditches in the interests of water conservation, it is apparent that so long as plaintiff carries out its rights to improve ·in a reasonable manner defendants have no legal grounds for complaint though the improvements result in decreasing the value of the servient estates. Neither would any reasonable improvements in the means of carrying the irrigation water be the the substitution of a new and different servitude on the servient estate and so give rise to an action to *enjoin the improvement* or *for damages for same* because any *reasonable improvement. in* the interests of water conservation is within the easement plaintiff acquired." (Emphasis added)

In our opinion the language in that case that one of the terms of the lost grant was an agreement to waive any claim for damages suffered by the defendants by reason of the improvement in the interest of water conservation is untenable. The statement that any *reasonable improvement* in the interest of water conservation would not justify any award for damages was dicta. The suit was for injunction and not for damages and was instituted not by the landowners but by the ditch company to enjoin the landowners from interfering with their proposed waterproofing.

In the Big Cottonwood case, Justice Wade, who wrote the . opinion of the court following the original hearing, concurred with the opinion of Mr. Justice Wolfe as to the question of the prescriptive easement on the following grounds only:

"In determining the nature of this prescriptive easement, its extent and limitations, the burdens and benefits which it confers upon each estate, we must look to the nature of the use which existed during the · prescriptive period. Since the right has its inception in the use during that time, its extent and limitations, its burdens and benefits are determined by *the nature of that use and the understandings of the parties thereto. Thus any use which would have probably been interrupted by the owner of the servient estate had the owner of the dominant estate attempted such use prior to the expiration of the prescriptive period, is a use which places a greater burden on the servient estate and therefore is beyond the prescriptive right acquired by* the dominant estate. \* \* \*" (Emphasis added)

In our opinion the emphasized language used by Mr. Justice Wade sets out the true .

basis upon which to determine if the proposed improvement may be made by the easement owner without liability to the owner of the servient estate.

Under the lost grant theory if it be assumed that the understanding of the parties contemplated that the ditch owner might at some future time undertake to waterproof its ditch, can it be assumed that there was likewise an understanding that the ditch owner might do it in any manner it saw fit and in a manner that would cause great damage to the landowner and would result in depreciation of the servient estate? We think not. Can it be questioned that had defendant in this case undertaken, prior to the expiration of the prescriptive period, what it now claims it was granted the right to do, to-wit: bulldozed the trees growing on the banks of its canal and left the same on plaintiffs' land, spread sand and gravel on plaintiffs' land over a 40-foot wide area; installed a deep, narrow and hazardous cement ditch such as described herein; failed to provide bridges or crossings over the same, that the proposed use would *have probably been interrupted* by the owner of the servient estate?

How then can it be said that the landowner included in the easement granted the right to improve, and reconstruct the ditch in any manner the ditch owner wished without any liability in damages to the landowner?

Since we are guessing as to what were the terms of the lost grant it is more likely that, if the question of future changes and improvements were considered, the landowner would not agree to grant an easement and with it the unrestricted right to so change it as to do great injury to the servient estate without being compensated for the same.

It is more probable and much more equitable to assume that the owner of the servient estate if he had in mind that changes might be necessary would have conditioned the right to make the changes with an agreement on the part of the easement owner that the same would be without damage to the servient estate and that the servient estate owner would be held harmless.

If we forget the lost grant theory and rest the right to make the improvements in the interest of conserving water it must be conceded that the ditch owner is the recipient of the benefits realized if water is saved for the ditch company and the easement owner should compensate for damages suffered by the landowner resulting therefrom.

In this case as in all other cases where the ditch company waterproofs its ditch in the interest of conservation the landowner gets no conceivable benefit and generally is damaged if the ditch company gives no consideration to the landowner. If the

easement owner knew that it would be held liable for damages suffered by the landowner by creating new hazards and as here by cutting the land in two, the ditch company would be much more concerned about making its improvements in the manner least likely to do damage to the landowner. Of course the right of the ditch owner to maintain, clean and repair the ditch having due regard for the servient estate is not here involved.

It is more difficult to apply the fiction of the lost grant to charge plaintiffs here with having contemplated that there would be established a Federal Conservancy District which would make available to defendant a water supply from the Weber River and that the parties contemplated that the defendant would be required to install the type of waterproofing used here in order to secure Federal assistance.

■ We are of the opinion that the court correctly submitted to the jury the question of damages resulting from the type of ditch installed, failure to provide bridges across the cement ditch, destruction of trees on the east bank, leaving the trees, brush and debris on plaintiffs' land and scarring plaintiffs' land for a distance of 40 feet.

■ We likewise are of the opinion that the court properly submitted to the jury the question of punitive damages. There was ample evidence upon which the jury might find that defendant's acts or some of them were wilfully and intentionally done and in conscious disregard of plaintiffs' rights, after the warning herein mentioned.

An examination of the instructions indicates that the same fully covered the issues and we believe correctly stated the law applicable.

We are therefore of the opinion that the judgment entered upon the verdict must stand.

■ Nor do we find merit to the contention of plaintiffs in their cross-appeal. The court committed no error in denying the injunction requested enjoining defendant from placing water acquired from a different source in the ditch and from maintaining the cement ditch on plaintiffs' land. Counsel for plaintiffs admitted in argument that defendant hadn't enlarged the carrying capacity of the ditch particularly since part of the old ditch was not cemented.

The court found that the utilization of water from the Weber Basin Water Conservancy District is beneficial, not only to the defendant, but to the State as a whole and that "in the balancing of the equities the court ought not to enjoin the defendant company from transporting the water across the lands of plaintiffs, even though such may later be shown to cause damage to the plaintiffs." The findings clearly indicate that defendant is entitled in the inter-

est of economy of the State to transport the new water supply, purchased by defendant, across the lands of plaintiffs even though it may be shown to cause damage to plaintiffs, "and that when and if such water is transported, there is some damage to the plaintiffs by reason thereof, the plaintiffs should not be foreclosed by this judgment or ordered from asserting and claiming such damage." The decree provided,

> " * * * this judgment shall be without prejudice to the rights of the plaintiffs to bring suit for damages, if any they shall suffer by reason of said transporting of water from new and different sources across the lands of the plaintiffs."

Nor do we wish to be understood as closing the door against the court's right and duty to grant injunctive relief if and when the proposed improvement even in the interest of conserving water and preventing waste, would cause irreparable injury and damage to the servient estate, out of all proportion to the benefits to be received.

We adhere to the concept that conservation of water is in the public interest, but even our zeal for this premise must not be permitted to result in the taking of private property without compensation or damages therefor in utter disregard for the rights of others.

■ Nor do we believe that, except in aggravated cases where the proposed improvement would constitute a taking of other property, the easement owner should be required to institute eminent domain proceedings where the purpose of the improvement is to conserve and avoid waste of water. With due regard to the rights of both the ditch owner and the owner of the servient estate, the court where an injunction is requested can determine whether injunctive relief should be granted or whether as was done by the trial court here, the improvement shall be permitted without prejudice to the property owner to recover damages. In such a case the court might well retain jurisdiction of the case to determine what, if any, damage was suffered by the landowner from making the improvement.

We find no error and the judgment is affirmed. Costs to plaintiffs.

WADE, J., concurs.

McDONOUGH, C. J., and HENRIOD, J., concur in the result.

CROCKETT, Justice (concurring).

I agree to affirming the judgment. It appears to me that there is no disagreement upon the proposition that a ditch owner's easement includes the right to do what is reasonable and necessary to take care of the ditch; and that he has the duty to do so to protect the servient estate from damage; and further that he may make reasonable

improvements in the ditch for the purpose of more efficiently transporting and conserving water. This may be done even though it has the effect of removing seepage or drainage waters from which the servient estate may have derived incidental benefits. The evidence here demonstrates that the defendant company transcended the precepts above mentioned. The right of the ditch owner, in making improvements, does not go so far as to permit him to take more land, nor to go upon the land in any such a manner as described in the main opinion. Therefore the issues of actual and punitive damages were both properly submitted to the jury. I likewise agree that the injunction was properly refused.

Judgment modified and as modified, affirmed.