Nick TOPIK, Plaintiff and Respondent,

v.

Anthony THURBER, Defendant
and Appellant.

No. 20038.

Supreme Court of Utah.

July 7, 1987.

Richard Bojanwski, John Call, Salt Lake City, for defendant and appellant.

Robert Echard, Ogden, for plaintiff and respondent.

HALL, Chief Justice:

Defendant appeals the judgment of the district court holding him liable for failing to honor the assignment of proceeds of a personal injury settlement.

Plaintiff Nick Topik and defendant's client, Robert Pett, entered into a contract wherein Pett agreed to construct houses on lots owned by plaintiff. Although plaintiff originally obtained loans from First Security Bank to build the houses, Pett was unable to complete the last house because expenditures had exceeded the construction loans. Therefore, Pett (with plaintiff as guarantor) borrowed an additional $20,000 from First Security Bank to complete the house. At the time he borrowed this money, Pett indicated to the Bank that the loans would be repaid from the sale of the houses and also from proceeds he expected to receive from a pending personal injury lawsuit.

Pett formally assigned to the Bank the proceeds he expected to receive from the lawsuit, and defendant repeatedly made verbal representations to the Bank that as Pett's attorney in the personal injury lawsuit, he would honor the "contract to act, in effect, as an escrow agent" when the money from Pett's lawsuit came "through his hands." Defendant also dictated a letter to the Bank which was signed by his secretary pursuant to defendant's standard office procedure. In that letter, he again represented that he would honor Pett's assignment when he received money from the settlement of the lawsuit.

Pett did not repay the notes, although his personal injury suit was eventually settled for approximately $170,000. Defendant did not notify plaintiff or the Bank that the money had been received. Instead, he paid the money directly to Pett.

Subsequently, Pett elected to file bankruptcy and listed the Bank's notes as unsecured and dischargeable debts. In response, the Bank claimed it was a secured creditor because of the assignment made. Meanwhile, the Bank also assigned plaintiff the right to claims it had against Pett and defendant.

Prior to trial, defendant testified in his deposition that he never signed a letter indicating that he would honor the assignment. Instead, he stated that if such document existed it was an unauthorized forgery which his secretary had made and for which she had been fired. Following trial, the court concluded that the representations made in defendant's deposition were "willful falsehoods." Indeed, evidence indicated that defendant's secretary was never fired and that she transcribed and signed the letter for defendant because he had instructed her to do so. Also, the court concluded that under the doctrine of promissory estoppel, plaintiff and the Bank had acted to their detriment upon defendant's representations. Therefore, plaintiff was awarded judgment for $38,726.75, plus court costs and $2,000 in attorney fees for defendant's bad faith defenses, which the court determined had extended the litigation unnecessarily.

Defendant's basic point on appeal is that the trial court erred in relying upon the doctrine of promissory estoppel in awarding judgment to plaintiff. In this regard, defendant claims that any benefit and consideration offered by the Bank for his promise to honor the assignment inured to Pett and not to defendant himself. Similarly, defendant claims that there is no evidence that plaintiff or the Bank detrimentally changed position in reliance upon defendant's statements made for his client.

Defendant also advances the contention that had he paid the money to plaintiff or the Bank, at the time of the settlement, the payment would have been recalled by the bankruptcy court as a "voidable preference to a creditor." Therefore, since both plaintiff and the Bank are now in the same position as they would have been after payment to the Bank and Pett's bankruptcy, "neither has been damaged in any way by defendant's actions," and it is "totally illogical to hold [defendant] personally lia-

ble for participating as an outsider in the accomplishment of what the bankruptcy court would have done anyway."

Furthermore, defendant argues that since plaintiff and Pett had a business relationship wherein they shared the proceeds from the sale of the houses, the bank loan was a partnership debt and, therefore, Topik is not a proper party plaintiff, as he was already obligated to repay the entire debt.

Finally, defendant contends that the assignment is unenforceable on its face because it required defendant to pay the entire proceeds of the settlement to the Bank, a sum greater than the amount owing.

 The Court is not so persuaded. The doctrine of promissory estoppel has application when a promise is made which can reasonably be expected to induce action or forbearance and which in fact induces action or forbearance from which a detriment is suffered.[1] The evidence at trial established that defendant made verbal and written promises to honor Pett's assignment as the funds passed through defendant's hands and that, based thereon, both plaintiff and the Bank forewent action to collect on Pett's debt.

The following chronology of events is extracted from the record:

12/11/79 First note executed for $10,000.

3/25/80 Second note executed for $10,000.

8/19/80 First note renewed for six months.

12/15/80 Second note renewed for six months.

Up to this time, Bank had no contact with defendant, having only spoken to previous counsel.

2/13/81 Defendant sends letter to Bank indicating that his client will assign proceeds. Discussions about assignment followed.

3/24/81 Assignment executed and first note renewed for second time (180–day note).

Bank relied on assignment in renewing note and spoke to Pett and plaintiff about the fact that the note would not have been renewed without the security of the assignment.

7/03/81 Second note renewed for second time (120–day note). Bank spoke with defendant twice by telephone prior to renewal. On both occasions, defendant advised that he would honor the assignment.

9/02/81 Letter to Bank from defendant (written promise).

11/81 Defendant assured plaintiff's attorney that he would honor the assignment.

Accordingly, the evidence supports the trial court's findings as to promissory estoppel and detrimental reliance.

 Moreover, the record before us does not disclose that any evidence was presented to the trial court in support of defendant's claim that the bankruptcy court would have set aside the transfer of funds even if defendant had kept his promise to act as escrow agent. The claim is thus based only upon conjecture. In any event, the claim not having been considered by the trial court, we do not address it for the first time on appeal.[2]

 Furthermore, defendant's contention that plaintiff and Pett were partners and therefore jointly liable for the indebtedness to the Bank is irrelevant to this case. Such relationship, even assuming it existed, would in no way negate defendant's own obligations and liabilities affirmatively undertaken and resulting from his verbal and written representations.

 Defendant's remaining contention is that the assignment is unenforceable on its face. While it is true that the form of the assignment is general in nature, the record amply demonstrates that the parties intended the assignment to secure only the sum Pett owed the Bank, the exact amount of which was known to the parties. Therefore, we deem it frivolous in this case to argue that the assignment was unenforcea-

---

**1.** *Sugarhouse Finance Co. v. Anderson,* 610 P.2d 1369 (Utah 1980).

**2.** *Insley Mfg. Corp. v. Draper Bank & Trust,* 717 P.2d 1341, 1347 (Utah 1986).

ble because the Bank would have had the right to receive the entire proceeds of Pett's personal injury suit settlement.

■ Defendant's final point on appeal is that the trial court erred in awarding attorney fees to plaintiff. Utah Code Ann. § 78–27–56 (1987) provides for an award of fees to the prevailing party "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." [3]

The record supports the findings of the trial court that defendant attempted to avoid liability by testifying falsely. In this regard, defendant testified at his deposition that he did not dictate the letter promising to honor the assignment to the Bank and that he did not sign or authorize signing of the same. Moreover, defendant told his client that he did not know about the letter, that his secretary had written the letter, and that she had been fired because of it. In contrast, defendant's secretary testified that she was never fired and that defendant dictated the letter and authorized her signing of the same. Consequently, the trial court's findings that defendant's defense was partially in bad faith and that his testimony constituted "willful falsehoods" support the court's decision to award attorney fees in this case,[4] and in accordance with the applicable standard of review, we do not disturb those findings.[5]

The judgment of the trial court is affirmed.

STEWART, A.C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

**3.** *See generally Cady v. Johnson,* 671 P.2d 149 (Utah 1983).

**4.** *Id.*

**5.** Utah R.Civ.P. 52(a); *Ashton v. Ashton,* 733 P.2d 147, 149–50 (Utah 1987).