**Jim J. VALCARCE, Plaintiff and Appellant,**

v.

**James B. FITZGERALD, Defendant and Appellee.**

**James B. FITZGERALD, Counterclaim Plaintiff,**

v.

**Paul VALCARCE, Jim J. Valcarce, and Paul C. Valcarce, Counterclaim Defendants and Appellant.**

**Fairview "C" Bar Ranch, a Utah general partnership, DeWayne Julander, and Joyce Julander, Intervenors.**

Nos. 960144, 960201.

Supreme Court of Utah.

June 26, 1998.

308

Jim J. Valcarce, Bethel, AK, pro se.

Richard C. Skeen, Robert W. Payne, Salt Lake City, for James Fitzgerald and intervenors.

Ralph J. Marsh, Salt Lake City, for Paul Valcarce.

## AMENDED OPINION

ZIMMERMAN, Justice:

Plaintiff Jim J. Valcarce and counterclaim defendant Paul Valcarce, Jim's father, appeal from a decision by the First District Court in Box Elder County that (i) ruled that defendant James B. Fitzgerald and intervenors Fairview "C" Bar Ranch and DeWayne and Joyce Julander ("the Fitzgerald parties") had a prescriptive right to take water across the Valcarces' property, (ii) awarded damages to the Fitzgerald parties for the Valcarces' interference with the water right and enjoined further interference by the Valcarces, and (iii) awarded the Fitzgerald parties attorney

fees totaling approximately $42,000 pursuant to section 78–27–56 of the Utah Code. The Valcarces claim that the trial court made numerous errors during the trial, touching every aspect of its rulings. We affirm the trial court's ruling on the merits and damages but reverse the costs award and remand for a redetermination of the attorney fees award.

A somewhat detailed description of the facts leading up to this case and its complex litigation history is necessary to a proper understanding of the issues on appeal. Therefore, we begin with a recitation of the facts before turning to our analysis.

In December of 1971, DeWayne and Joyce Julander bought a parcel of land in Box Elder County, along with rights to water in the nearby Packer–Stauffer Spring, the parcel's only water source, and all other water rights used in connection with the land. They subsequently leased the property to James B. Fitzgerald, who used it for farming.

In November 1989, Joyce Stauffer conveyed to Jim J. Valcarce and his brother Paul C. Valcarce a parcel of land immediately adjacent to the Julander parcel. This conveyance included water rights in the Packer–Stauffer Spring. An irrigation canal carrying water from the Packer–Stauffer Spring runs from a head gate on the northeastern corner of the Valcarce property, across the eastern end of the property, onto the Julander property, and then onto a parcel of land owned by the Fairview "C" Bar Ranch. The irrigation canal has existed and has been used for the benefit of the Julander property and the "C" Bar Ranch property for at least forty years, and the users of these properties have coordinated their use of the canal and their interests in the spring water during this period.

Around 1990, Paul Valcarce damaged the head gate to the irrigation canal, allowing the water to flow out of the canal and into a natural wash running through the Valcarce property. After the water ran along the wash, it continued onto the western end of the Julander property and flooded the property's western two acres. This prevented Fitzgerald from growing crops on those two acres. Subsequently, Fitzgerald installed damming devices at the head gate to keep the water from spilling out of the head gate and to direct water into the irrigation canal. On numerous occasions in 1993 and 1994, Fitzgerald saw Paul Valcarce remove the damming devices, which consequently prevented the water from entering the canal. As a result, Fitzgerald could not water his fields on the Julander property. In May of 1993, Fitzgerald witnessed Paul Valcarce plowing dirt into the canal along the section of the canal crossing the Valcarce property. This destroyed the west bank of the canal and prevented the water from reaching the properties below. Fitzgerald hired a backhoe, removed the dirt from the canal, and repaired the bank.

To minimize the damage to his crops, in June of 1993, Fitzgerald placed a ten-inch PVC irrigation pipe across the eastern end of the Valcarce property, in the location of the ruined canal, to convey water to the property that he was leasing from the Julanders. The pipe ran along the Julander property and extended approximately sixty feet onto the Valcarce property. The pipe leaked and flooded the Valcarce property. On June 13, 1994, Jim Valcarce brought an action for trespass against Fitzgerald, claiming damages of up to $25,000. Valcarce subsequently amended his complaint to seek $50,000.

In June of 1994, Fitzgerald filed a counterclaim against Jim Valcarce to quiet title to the irrigation canal traversing the Valcarce property. Fitzgerald also claimed damages for Valcarce's intentional interference with the canal and the water delivery system of the Packer–Stauffer Spring. DeWayne and Joyce Julander and the "C" Bar Ranch moved to intervene and to add Paul Valcarce as a counterclaim defendant. The Fitzgerald parties moved to obtain a preliminary injunction against Jim Valcarce to prevent him from interfering with the irrigation canal. The trial court ordered intervention and joinder of the various parties. Paul C. Valcarce, Jim's brother, was later dismissed from the suit, and the "C" Bar Ranch dropped its claims against the Valcarces.

A preliminary injunction hearing was held in August 1994. Judge Ben H. Hadfield

found the easement well established and issued a preliminary injunction in September of 1994. On September 28, 1994, the Fitzgerald parties moved for partial summary judgment to establish the existence of their prescriptive easement to the irrigation canal and to obtain a permanent injunction against interference with the canal. The Valcarces opposed the motion and filed their own motion for partial summary judgment. On December 23, 1994, Judge Hadfield granted the Fitzgerald parties partial summary judgment and determined that the easement existed.

On September 6, 1995, one month before the scheduled trial, and one year after the last pleading had been filed, the Valcarces filed an affidavit of bias or prejudice, seeking to remove Judge Hadfield from the case. The matter was fully briefed, and although Judge Gordon Low concluded that Judge Hadfield need not recuse himself, Judge Hadfield voluntarily turned the case over to Judge Low.

The remaining factual issues were tried before Judge Low in December of 1995. He issued a memorandum decision awarding damages to Fitzgerald of $1,496.44 for his 1993 crop losses and $3,839.75 for losses in 1994. The court awarded Julander damages of $1200 per year for 1992 through 1995, for a total of $4800. In January 1996, the trial court issued a permanent injunction, preventing the Valcarces from interfering with the water delivery system for the Packer–Stauffer Spring and requiring the parties to take their water according to a schedule of turns. The Fitzgerald parties moved for attorney fees under section 78–27–56 of the Code, asserting that the Valcarces' claims and defenses were maintained in bad faith and were wholly without merit. After full briefing on the matter, the court awarded the Fitzgerald parties their requested fees along with costs. On March 15, the court issued findings and conclusions on all issues, including attorney fees. The court then overruled all of the Valcarces' objections to the decision.

On appeal, the Valcarces attack the finding of a prescriptive easement, the damages award, and the attorney fees and costs awards on numerous grounds.

Regarding the trial court's finding of a prescriptive easement and its violation, the Valcarces claim a number of errors: (i) that the trial court erred in finding that a prescriptive easement had been established; (ii) that the trial court erred in finding that Fitzgerald's installation of a PVC pipe in the irrigation canal was reasonable and benefitted the Valcarce property; and (iii) that the trial court erred in allowing the Fitzgerald parties to claim damages incurred before the prescriptive easement was legally established. We address each claim in turn.

We begin with the issue of the existence of the prescriptive easement. The Valcarces contend that the Fitzgerald parties did not meet their burden of proving a prescriptive easement because they failed to prove the necessary element of "adverseness" of the use of the irrigation canal. They claim that the trial court's comments at the conclusion of the trial, that "[p]eople who share water need to get along as neighbors in sharing that water," show that the trial court did not make the necessary finding of adverseness. We disagree.

The finding that an easement exists is a conclusion of law. Such a finding is, however, the type of highly fact-dependent question, with numerous potential fact patterns, which accords the trial judge a broad measure of discretion when applying the correct legal standard to the given set of facts. We therefore overturn the finding of an easement only if we find that the trial judge's decision exceeded the broad discretion granted. See State v. Pena, 869 P.2d 932, 937 (Utah 1994).

A party claiming a prescriptive easement must prove that his use of another's land was open, continuous, and adverse under a claim of right for a period of twenty years. See Savage v. Nielsen, 114 Utah 22, 197 P.2d 117, 122 (1948). However, once a claimant has shown an open and continuous use of the land under claim of right for the twenty-year prescriptive period, the use will be presumed to have been adverse. See Zollinger v. Frank, 110 Utah 514, 175 P.2d 714, 716 (1946). To prevent the prescriptive easement from arising, the owner of the servient estate then has the burden of establish-

ing that the use was initially permissive. *See id.; Richins v. Struhs,* 17 Utah 2d 356, 412 P.2d 314, 316 (1966).

In the present case, the Fitzgerald parties proved the elements necessary to give rise to the presumption of adverseness. The Valcarces did not then present evidence to prove that the initial use of the easement was permissive such as to rebut the presumption. Therefore, we conclude that the trial court did not err in finding establishment of the easement. The fact that the judge urged the Valcarces to act in a neighborly fashion and to permit the Fitzgerald parties to use the easement certainly does not show that the use of the canal over the twenty-year prescriptive period was permissive. This court has affirmed findings of adverse use and, thus, prescriptive right in other cases in which the former landowners displayed "neighborliness." *See, e.g., Richins,* 412 P.2d at 315 (relatives worked together to build common driveway); *Zollinger,* 175 P.2d at 716–17 (former servient estate owner removed broken bridge across irrigation ditch and immediately notified claimant, indicating cordial neighborly relations); *Crane v. Crane,* 683 P.2d 1062, 1065 (Utah 1984) (servient estate owners provided claimants with key to gate that accessed easement road on which claimants drove their cattle). Although each of these factual situations involved acts of neighborly accommodation and cordial relations, we nevertheless upheld the adverse presumption in the absence of sufficient proof that the use was initially permissive. As we stated in *Richins,* the fact that the parties were initially friendly or cordial with one another does not prevent a prescriptive right from arising. 412 P.2d at 316.

Turning to the issue of the scope of the easement, the Valcarces claim that the trial court erred in finding that Fitzgerald's installation of a plastic PVC pipe in the irrigation ditch did not unreasonably burden the servient estate. The Valcarces claim that the trial court abused its discretion because there was no evidence to indicate that use of the easement during the prescriptive period included the installation of a plastic pipe. To successfully challenge a trial court's findings of fact on appeal, "[a]n appellant must mar-

shal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)). Because the Valcarces have failed to marshal the evidence, this claim must fail.

The Valcarces also claim that the trial court erred as a matter of law. They rely on *Harvey v. Haights Bench Irrigation Co.,* 7 Utah 2d 58, 318 P.2d 343 (1957), to support the proposition that because no plastic pipe had ever been used to transport water during the prescriptive period, Fitzgerald's installation of the pipe increases the burden on the servient property and goes beyond the scope of the easement. This is a question of law, which we review for correctness. *See Pena,* 869 P.2d at 936.

The general rule is that the extent of a prescriptive easement is measured and limited by its historic use during the prescriptive period. *See McBride v. McBride,* 581 P.2d 996, 997 (Utah 1978). "The right cannot be enlarged to place a greater burden or servitude on the property." *Nielson v. Sandberg,* 105 Utah 93, 141 P.2d 696, 701 (1943); *see also Harvey,* 318 P.2d at 349. We note, however, that the common law of Utah requires a different approach to the use of easements than that of England or of our "sister states." In *Big Cottonwood Tanner Ditch Co. v. Moyle,* 109 Utah 213, 174 P.2d 148 (1946), we explained that Utah law assumes that at the time the prescriptive right arose, the parties concerned knew of the arid nature of our state and contemplated that in the future the water owner would need to prevent waste and accommodate a more efficient use of limited available water. *Id.* 174 P.2d at 157. Thus, water users must have contemplated that a ditch might later need to be improved to save water. We therefore held that further reasonable efforts to conserve water could be made by an easement owner so long as they did not unnecessarily burden the servient estate. *Id.* at 158. To this end, an easement owner may install

"reasonable and necessary improved structures (not taking more or different land) in order to conserve the water." *Harvey,* 318 P.2d at 348.

 As noted above, the trial court found that Fitzgerald's piping of the canal was a reasonable improvement, and we defer to that finding of fact. The question we must answer, therefore, is whether the use of a plastic PVC pipe unnecessarily burdens the Valcarces' land. We held in *Moyle* that an easement acquired by an irrigation company for the purpose of carrying irrigation water in ditches across the defendants' land included the right to improve the method of carrying the irrigation water for reasons of water conservation. 174 P.2d at 157. The irrigation company in *Moyle* had cemented and waterproofed its ditches, and it narrowed the channels to course water through in a swifter current, thereby averting considerable water loss from seepage and evaporation. *Id.* at 150. Although the improvements resulted in both a loss of seepage water that had supported flora on the servient estate and in an increased danger to children, we held that the improvement did not materially change the burden or add additional burdens to the servient estate. *Id.* at 156. Here, as in *Moyle,* the Fitzgerald parties have acquired an easement to carry irrigation water in a ditch across the Valcarces' land. The trial court found, and we agree, that Fitzgerald's improvement to the ditch enhances both the conveyance and the conservation of the water without materially changing the burden or adding any additional burdens to the Valcarce estate. Therefore, the trial court did not err.

Paul Valcarce's last claim regarding the easement is that a claim for damages for interference with a prescriptive easement cannot be brought before the easement has been legally established in court. He claims that the Valcarces were acting only to protect their property, not to intentionally violate an unknown right of another, and that the trial court erred in awarding damages to the Fitzgerald parties for the Valcarces' actions taken prior to the court decree that established the easement.

 Paul Valcarce's brief on appeal contains little analysis on this point. There is no reference to legal authority in support of his contention, and no citation to the record. It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief. *See State v. Price,* 909 P.2d 256, 263 (Ct.App.1995), *cert. denied,* 916 P.2d 909 (Utah 1996); *State v. Wareham,* 772 P.2d 960, 966 (Utah 1989) (declining to address issue where "brief wholly lacks legal analysis and authority to support ... argument"). Because of inadequate analysis, we decline to address Paul Valcarce's claim on appeal.

We have reviewed the Valcarces' other claims as to the merits of the case and find them to be without merit. We therefore turn to the question of whether the trial court erred in its award of damages.

The Valcarces first argue that the judgment for damages exceeds the amount found by the court at conclusion of trial by $641.25. In December of 1995, the lower court issued a memorandum decision that found the damages for Fitzgerald's 1994 crop loss were "$3,259.75 ... and $580.00 associated costs for a total of $3,839.75." However, the findings, prepared and submitted by the Fitzgerald parties, show the 1994 crop loss to Fitzgerald to be $3901, with $580 associated costs. The Fitzgerald parties claim that Judge Low's memorandum decision inadvertently miscalculated Fitzgerald's damages and that they later brought this fact to the attention of the court and of the Valcarces. The Valcarces objected to the change. After considering the filings, Judge Low recognized his error and executed findings that more accurately reflected the evidence before the court.

 The Valcarces cite no authority for the proposition that a court cannot correct damages miscalculations between the issuance of a memorandum decision and the issuance of the final findings and conclusions. A trial court is well within its discretion to correct a miscalculation of damages. We affirm the damage findings and conclusions.

The Valcarces next argue that the judgment in favor of the Julanders for $4800 for loss of land value and in favor of Fitzgerald

for $5,977.44 for damages to crops constitutes double recovery for the rental of the Julanders' property. They question Fitzgerald's method of calculating damages. They also note that the Julanders claimed a loss of $1200 per year, based on the difference between the price of $100 per acre per year at which he listed his property and the $40–per–acre–per–year rent he actually received from Fitzgerald (Fitzgerald rented twenty acres), allegedly due to the Valcarces' interference with the water. The court awarded the Julanders damages of $1200 per year for 1992 through 1995, totaling $4800.

The Valcarces argue that the problem with this award is the Julanders' claim that they could have collected rent from Fitzgerald totaling $2000 rather than $800 per year had James Valcarce not interfered with the water system. Thus, the Valcarces argue, the Julanders would have had no damages and Fitzgerald would have had increased expenses of $1200 per year; consequently, Fitzgerald would have had $1200 less income per year. Jim Valcarce's actions accordingly caused $1200 per year loss to the Julanders but actually *saved* Fitzgerald $1200 per year in expenses. The loss to the Julanders, they claim, was actually a benefit to Fitzgerald. Therefore, the award of damages to the Julanders of $4800 for four years without deducting that same amount from the damages claimed by Fitzgerald constitutes double recovery, according to the Valcarces.

■ Whatever the plausibility of this reasoning, the Valcarces presented no evidence at trial to prove these claims. Although the Valcarces had the opportunity to cross-examine Fitzgerald concerning his damages claim, neither of them explored the issue of rent with Fitzgerald and/or the effect of rent on his damages calculations. No other evidence was submitted by the Valcarces at trial in support of this notion of double recovery. However, both the Julanders and Fitzgerald provided evidence as to their separate damages, and the court found their evidence to be credible and awarded damages based on that evidence. The trial court's determination is supported by the evidence presented.

■ We have reviewed the Valcarces' remaining claims regarding miscalculated

damages and find them to be without merit. On each claim, either they have failed to marshal the evidence supporting the trial court or they simply attempt to reargue contradictory evidence in their own favor. Trial courts are accorded wide latitude in determining factual matters. They are in the best position to assess the credibility of the witnesses and to gain a sense of the proceeding as a whole. *See Bruner v. Carver*, 920 P.2d 1153, 1158 (Utah 1996); *State v. Goodman*, 763 P.2d 786, 787 (Utah 1988). Where contradictory testimony is offered by two witnesses, "[t]he fact finder is free to weigh the conflicting evidence presented and to draw its own conclusions." *State v. Pierce*, 722 P.2d 780, 782 (Utah 1986) (citations omitted). Accordingly, the trial court did not err in awarding the damages as calculated by the Fitzgerald parties.

■ Turning to the trial court's finding that Paul and Jim Valcarce were jointly and severally liable for all the damages, Paul Valcarce objects to the trial court's finding that he was the agent of Jim Valcarce. Paul Valcarce claims that there is no allegation in the pleadings that Paul was Jim's agent, and no evidence of such agency was presented at trial. This is simply incorrect. The Fitzgerald parties point out that they asked the trial court to award damages jointly and severally against Paul and Jim Valcarce in their amended counterclaim and in their third-party complaint. Further, the question of whether an agency relationship exists is one of fact, which we review for an abuse of discretion. *See Pena*, 869 P.2d at 935–36. The Fitzgerald parties presented ample evidence to support the trial court's finding. Therefore, the finding is affirmed.

■ Paul Valcarce further objects to being found liable for the damages caused by Jim Valcarce's trespassing pigs. Neither the Julanders nor Fitzgerald has claimed that Paul owned these pigs; the court found that they were owned by Jim and that he had the responsibility to control them. The award of any damages against Paul Valcarce for mitigation costs to Fitzgerald for damages caused by the pigs is unfounded and must be reversed. Because neither the findings nor

the evidence specifies the amount of crop loss damage caused by the pigs, we must remand to the trial court on this issue. The damages award against Paul Valcarce should be reduced by the amount the trial court determines was allocated to crop loss damage caused by the pigs.

Turning to the issue of attorney fees, the Valcarces claim (i) that the trial court erred in awarding attorney fees because its finding that the Valcarces' claims and defenses were meritless and brought in bad faith was erroneous; (ii) that the trial court erred in finding the amount of attorney fees to be reasonable; (iii) that the trial court made various calculation errors; and (iv) that the trial court's award of costs was not supported by the required bill of costs.

▮▮▮ We first turn to the question of whether the trial court properly awarded attorney fees under section 78–27–56 of the code. Whether attorney fees are recoverable in an action is a question of law, which we review for correctness. *See Robertson v. Gem Ins. Co.*, 828 P.2d 496, 499 (Utah Ct. App.1992). Likewise, whether the trial court's findings of fact in support of an award of fees are sufficient is a question of law, reviewed for correctness. *See State v. Pharris*, 846 P.2d 454, 459 (Ct.App.) (citing *State v. Ramirez*, 817 P.2d 774, 782 (Utah 1991)), *cert. denied*, 857 P.2d 948 (Utah 1993). However, the trial court has "broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard." *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988).

▮▮▮ Under section 78–27–56, attorney fees may be awarded "if the court determines that the action or defense to the action [i] was without merit and [ii] not brought or asserted in good faith." Utah Code Ann. § 78–27–56. We address this two-part test

in order. The first question is whether the trial court erred in finding that the Valcarces' claims and defenses were meritless. We conclude that the trial court properly found the Valcarces' claims and defenses to be meritless. Although the Valcarces' claims may have had some basis in law and they ostensibly provided evidence of their factual claims, the trial court found the facts to be contrary to that evidence. We review one specific instance of this as illustrative. Paul Valcarce testified at trial that he did not damage the irrigation canal or its dams. However, the trial court found his testimony to be "incredible" and concluded that Paul Valcarce did indeed damage the canal. We held in *Topik v. Thurber*, 739 P.2d 1101, 1104 (Utah 1987), that a finding that a party has attempted to avoid liability by testifying falsely will support a decision to award attorney fees if combined with a finding of bad faith. Thus, the case makes clear that testifying falsely is not a legitimate mode of defense. Because his defense was without merit, Paul Valcarce can be held responsible for those attorney fees that were incurred after he was joined as a party if we find that his actions were taken in bad faith. The trial court properly found that the Valcarces' other claims and defenses were similarly without merit.

▮▮▮ We now address the second issue under section 78–27–56, whether the Valcarces acted in bad faith. The Valcarces assert that the trial court failed to make specific findings with regard to each element of the statute. Although they admit that the trial court specifically found their claims and defenses to be without merit, the Valcarces assert that because the trial court did not specifically find bad faith, the statutory elements are not met. We do not agree.[1]

▮▮▮ A finding of bad faith is a mixed question of law and fact that turns on a

---

1. This court stated in *Watkiss & Campbell v. Foa & Son* that section 78–27–56 requires the trial court to "make specific findings with regard to each element of the statute." 808 P.2d 1061, 1068 (Utah 1991). In *Watkiss*, we suggested that such findings assist reviewing courts in determining "whether the award of attorney fees was based on a meritless claim brought in bad faith or simply because the recovering party pre-

vailed." *Id.* However helpful such findings may be, the failure to enter them, alone, does not warrant reversal. The statement in *Watkiss* was dicta, and we do not follow it today. *See Canyon Country Store v. Bracey*, 781 P.2d 414, 421–22 (Utah 1989) (holding that section 78–27–56 does not require written findings when awarding attorney fees).

factual determination of a party's subjective intent. *See Taylor v. Estate of Taylor,* 770 P.2d 163, 171 (Utah Ct.App.1989). The wide variety of circumstances that might support a finding of such intent requires that we give a trial court relatively broad discretion in concluding that bad faith has been shown. *See Pena,* 869 P.2d at 936; *Canyon Country Store v. Bracey,* 781 P.2d 414, 421 (Utah 1989).

■ To find that a party acted in "bad faith," the trial court must find that one or more of the following factors existed: (i) The party lacked an honest belief in the propriety of the activities in question; (ii) the party intended to take unconscionable advantage of others; or (iii) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others. *See Cady v. Johnson,* 671 P.2d 149, 151 (Utah 1983).

■ In this case, the trial court specifically found that the Valcarces pursued their claims with "no other apparent reason than to harass [the Fitzgerald parties] and/or to drive up the costs of litigation." This finding illustrates the trial court's conviction that the Valcarces lacked an honest belief in the propriety of their activities and that they acted with the knowledge that their activities would hinder, delay, or defraud the Fitzgerald parties. Thus, the trial court specifically found that one or more of the *Cady* factors existed and was not required to expressly use the magic words "bad faith" in determining the applicability of section 78–27–56. Although it would be better practice for trial judges to list the specific statutory elements, we adhere to the assumption set forth in *Ramirez:*

> [I]n cases in which factual issues are presented to and must be resolved by the trial court but no findings ... appear in the record, we "assume that the trier of facts found them in accord with its decision, and we affirm the decision if from the evidence it would be reasonable to find facts to support it."

817 P.2d at 787 (quoting *Mower v. McCarthy,* 122 Utah 1, 245 P.2d 224, 226 (1952)) (additional citations omitted). Under *Ramirez,* "this court upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings." *Id.* at 788 n. 6. The question is whether there is evidence from which the trial court could reasonably have entered a finding of bad faith. We conclude there is. The trial court's finding that the Valcarces acted with the intent to harass and to increase litigation costs was sufficiently specific in referring to the issue of bad faith, and we affirm the trial court's finding.

■ We now turn to the question of whether the trial court abused its discretion in finding that the attorney fees requested by the Fitzgerald parties were reasonable. "The standard of review on appeal of a trial court's award of attorney fees is 'patent error or clear abuse of discretion.'" *City Consumer Serv., Inc. v. Peters,* 815 P.2d 234, 240 (Utah 1991) (quoting *Beckstrom v. Beckstrom,* 578 P.2d 520, 524 (Utah 1978)).

The Valcarces claim that the requested fees are unreasonable because of the amount claimed and because the award is not supported by the evidence. On the first of these points—the amount of the fee request—the Valcarces rely on *Dixie State Bank* to argue that the trial court did not adequately consider whether the amount of work performed by the Fitzgerald parties' attorneys was reasonably necessary, that there is no evidence of the customary fees for attorneys in the locality, and that the request for $42,000 in fees is uncalled for where the award of damages is only $10,000 and the issues in the case are not complex.

*Dixie State Bank* sets forth four questions that the trial court should consider in determining a reasonable fee:

1. What legal work was actually performed?

2. How much of the work performed was reasonably necessary to adequately prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?

4. Are there circumstances which require consideration of additional factors,

including those listed in the Code of Professional Responsibility?

764 P.2d at 990 (footnotes omitted).

Despite this listing of issues, in *Dixie State Bank* we took care to note that what an attorney bills or the number of hours spent on a case is not determinative. *Id.* "[A]lthough the amount in controversy can be a factor in determining a reasonable fee, care should be used in putting much reliance on this factor." *Id.* The total amount of attorney fees awarded in a case cannot be said to be unreasonable just because it is greater than the amount recovered in damages. *See Cabrera v. Cottrell,* 694 P.2d 622, 625 (Utah 1985) (stating that "[t]he amount of the damages awarded in a case does not place a necessary limit on the amount of attorneys fees that can be awarded."). Further, while the award of attorney fees must be supported by evidence in the record, *Dixie State Bank,* 764 P.2d at 990, the trial court has discretion in determining the question of a fee's "reasonableness," as this issue must be decided against a variety of factual backgrounds. *Id.* at 989; *see Pena,* 869 P.2d at 939. A trial court's discretion in determining the amount of a reasonable attorney fee "arises from the fact that it is in a better position than an appellate court to gauge the quality and efficiency of the representation and the complexity of the litigation." *Richard Barton Enters. v. Tsern,* 928 P.2d 368, 380 (Utah 1996). Thus, as noted above, in the absence of an abuse of discretion, this court will not disturb the trial court's findings. *See Beckstrom,* 578 P.2d at 523–24.

In light of the foregoing, we address the Valcarces' claim that the amount of the fee alone warrants reversal. In the present case, the damages claimed total less than $10,000. Attorney fees of $42,000 are clearly much higher than they might have been. That alone, however, does not make them unreasonable. The fees incurred by the Fitzgerald parties were increased many times over what they should have been by the litigation tactics employed by the Valcarces and by their bad faith claims. The trial court found the award of the $42,000 fee requested by the Fitzgerald parties' attorneys to be "fair and reasonable" under all the circumstances, which were admittedly unusual. Finally, the Valcarces have not marshaled the evidence supporting an award in this amount and then shown that evidence to be legally insufficient. We conclude that the $42,000 award was not unreasonable.

We next address the question of whether certain specific elements of the Fitzgerald parties' request for attorney fees were adequately supported. Paul Valcarce claims that the Fitzgerald parties failed to properly delineate the time spent by their attorneys in each phase of the action and by each separate party. Because the Fairview "C" Bar Ranch dropped out of the suit, he claims it was improper for the trial court to award fees incurred on behalf of it against the Valcarces. In addition, he argues that a substantial amount of the fees were incurred before he was joined in the suit, including rule 11 sanctions in the amount of $2,222.80 that were imposed against Jim Valcarce. Finally, he claims that the fee award is in error because some aspects of the Fitzgerald parties' counterclaim were unsuccessful. Relying on *Amica Mutual Insurance Co. v. Schettler,* 768 P.2d 950 (Utah Ct.App.1989), he asserts that the bad faith statute requires "findings as to when and why the attorney fees were incurred" and urges us to deny the claim for fees against him.

Under section 78–27–56, fees incurred in defending against a bad faith claim, or against a bad faith defense to a claim are recoverable. In the absence of a bad faith defense to a claim, the statute does not permit a party to recover fees incurred in pursuing its own claims. *See* Utah Code Ann. § 78–27–56 (1996). Furthermore, a trial court's award of attorney fees must distinguish between those fees incurred in connection with successful and unsuccessful claims, as must the evidence submitted by the prevailing party, or the reviewing court will be precluded from making an independent determination. *See Graco Fishing v. Ironwood Exploration,* 766 P.2d 1074, 1079–80 (Utah 1988); *Trayner v. Cushing,* 688 P.2d 856, 858 (Utah 1984); *Mountain States Broadcasting Co. v. Neale,* 783 P.2d 551, 556 n. 10 (Utah Ct.App.1989).

We addressed this issue in *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982). In that case, the plaintiff argued that it should be awarded the attorney fees expended in prosecuting its claims against all defendants because it was successful against a single defendant. This court disagreed, stating, "When a plaintiff has a substantial claim against one defendant, he should not have a free ride to assert claims against other defendants with the expectation that the target defendant will end up paying all attorney fees, even those related to unsuccessful and perhaps frivolous claims." *Id.* at 671.

■■■■■ Here, some of the Fitzgerald parties' claims were unsuccessful. While a trial court may, in its discretion, deny fees altogether for failure to allocate, *see Commerce Financial v. Markwest Corp.*, 806 P.2d 200, 204 n. 4 (Utah Ct.App.1990), it may not award wholesale all attorney fees requested if they have not been allocated as to separate claims and/or parties. We find that the trial court erred in awarding the Fitzgerald parties the full amount of their requested attorney fees without recognizing that some of the time charged by the Fitzgerald parties' counsel was spent on unsuccessful issues. We remand for a review and allocation of the recoverable fees.

Turning to the issue of the rule 11 sanctions, we must disagree with Paul Valcarce's claim that rule 11 sanctions were improperly imposed against him because he was not yet a party to the suit. Paul Valcarce had been a party to the litigation for more than a month before the affidavits were filed which led to the rule 11 sanctions imposed by the trial court. In fact, Paul Valcarce signed one of the offending affidavits and was jointly responsible for all of them. Thus, we affirm the rule 11 sanctions against him.

We next address whether costs were improperly assessed against the Valcarces. The facts surrounding the costs issue are as follows: On January 29, 1996, Judge Low awarded the Fitzgerald parties attorney fees "together with costs." The memorandum decision stated that "no costs figures have been asserted in the Judgment and as the Court has not received a Certificate of costs ...

counsel for the [Fitzgerald parties] is directed to provide to the Court a ... Memorandum of Costs." On February 17, 1996, nineteen days after the judgment was entered, Robert Payne, counsel for the Fitzgerald parties, filed an affidavit regarding fees and costs. Mr. Payne claimed that the total costs accrued in the action were $2,204.02 and attached detailed invoices supporting his assertions. The invoices separate costs from charges for attorneys' work; it appears these costs included photocopies, telephone and fax charges, Westlaw charges, Federal Express charges, transcript copies, postage, mileage, court filing fees, and the like.

Rule 54(d) provides that costs are awarded as of course to a prevailing party and that the trial court is to assess costs based on a verified memorandum of costs, which must be filed by the successful party within five days after entry of judgment. Utah R. Civ. P. 54(d). The successful party must also serve a copy of the verified memorandum on the adverse party within the same time. The rule allows the adverse party seven days in which to object to the costs claimed. However, section 78–27–56, relied upon by the Fitzgerald parties in defense of the award, refers only to *attorney fees*, with no mention of "costs" recoverable under the statute.

■■■■ In interpreting a statute, the court must look first to its plain language. *See In re Worthen*, 926 P.2d 853, 856 (Utah 1996). The trial court's memorandum decision states that the Fitzgerald parties moved the court, pursuant to section 78–27–56, for attorney fees. The court then awarded them "costs along with fees." We do not interpret this as an attempt to expand section 78–27–56 beyond its terms to include "costs." Rather, we take it to be a reference to the generally understood meaning of "costs" in rule 54(d)(1) and to the fact that the prevailing party is to recover them as of course. Utah R. Civ. P. 54(d). However, under rule 54(d)(2), costs are allowed only if the requisite memorandum is filed within five days of the judgment. Because the Fitzgerald parties did not file a verified memorandum of costs within five days, the award of $2,204.02 must be deleted from the judgment.

■ As a final matter, we address the Fitzgerald parties' claim that they are entitled to the attorney fees they incurred on appeal. We stated in *Salmon v. Davis County*, 916 P.2d 890, 895 (Utah 1996), "This court has interpreted attorney fee statutes broadly so as to award attorney fees on appeal where a statute initially authorizes them." In addition, when a party who received attorney fees below prevails on appeal, "the party is also entitled to fees reasonably incurred on appeal." *Utah Dep't of Social Servs. v. Adams*, 806 P.2d 1193, 1197 (Utah Ct.App.1991).

Although we have modified the judgment on appeal, the Fitzgerald parties nevertheless may be appropriately regarded as having prevailed. *See generally Mountain States Broadcasting Co.*, 783 P.2d at 555–57. The Fitzgerald parties, however, did not retain all of their trial victory on appeal, and some adjustment may be necessary so that they do not recover fees attributable to issues on which they did not prevail. *See id.* at 556 n. 10. We accordingly remand for further consideration of attorney fees and for such further proceedings and relief as may be appropriate in that regard. *See generally Halladay v. Cluff*, 739 P.2d 643, 645 n. 5 (Ct.App.), *cert. denied*, 765 P.2d 1277 (Utah 1987).

We have considered the parties' other claims of error and find them to be meritless.

RUSSON, J., concurs in Justice ZIMMERMAN's opinion.

STEWART, J., concurs in the result.

HOWE, Chief Justice, concurring and dissenting:

I concur in the majority opinion with the following exceptions.

## I. ATTORNEY FEES ON APPEAL

I would not award any attorney fees on appeal for two reasons. First, in *Management Services Corp. v. Development Associates*, 617 P.2d 406, 409 (Utah 1980), we observed that a successful plaintiff in the trial court that is awarded fees would have its rights diminished if it is required to successfully defend its recovery on appeal at its own expense. That reasoning, however, fails to support an award of fees on appeal to a party that cannot successfully defend on appeal its recovery in the trial court. Such is the instant case where the Fitzgerald parties have not successfully defended the award of fees made to them by the trial court. Thus the appeal by the Valcarces was necessary and justified to correct trial court error. In that situation, the parties should bear their own fees on appeal. See *Zoll & Branch v. Asay*, 932 P.2d 592, 596 (Utah 1997), where we denied attorney fees on appeal to a respondent who did not successfully defend on appeal his entire trial court award.

Second, the basis for awarding fees to the Fitzgerald parties in the trial court was section 78–27–56, which allows an award of fees when the action or defense to the action was without merit and not brought or asserted in good faith. While the majority upholds awarding fees to the Fitzgerald parties for their attorney's trial court services under section 78–27–56, the majority does not find or even discuss whether the requirements of the statute have been met on appeal. Clearly, the requirements have not been met inasmuch as we have found trial court error. Thus the appeal by the Valcarces is meritorious and is not brought in bad faith, leaving no basis for awarding fees on appeal to the Fitzgerald parties.

## II. ATTORNEY FEES IN THE TRIAL COURT

I concur in remanding the case to the trial court for "a review and allocation of the recoverable fees" for services in the trial court and make the following observations. It is not clear to me that the trial court intended that the full award of $42,420.02 for attorney fees was to be against Paul as well as his son, Jim. If that was intended, it was error as the majority concludes. Paul did not bring this action; he defended himself against the claims of Fitzgerald and the Julanders. Some of those claims were denied. No fees in defending against Jim's claims or in pursuing claims against Jim are allowable against Paul. Fees incurred before Paul was made a party and fees incurred on behalf of

Fairview "C" Bar Ranch are not allowable against him. While Paul may have in some instances acted as agent for Jim, the opposite is not true: Jim was not the agent of Paul, and therefore, Paul is not responsible for Jim's conduct. The trial court will need to "sort out" the time spent by the attorney for the Fitzgerald parties and properly allocate his fees to either Jim or Paul or to both jointly.

### III. JULANDERS' DAMAGES FOR 1992 and 1995

I would reverse the award of damages to the Julanders for loss of rent for 1992 and 1995 because there is no evidence to support that award. Before the beginning of the 1995 growing season, the Valcarces had been enjoined from interfering with Fitzgerald's water right. They did in fact not interfere that year. Accordingly, no damages were awarded to the Fitzgeralds for any 1995 losses. That being so, no damage could be sustained by the Julanders, who were Fitzgerald's lessors. In fact, Fitzgerald testified that he paid only $800 rent for 1995 because that was all the Julanders asked for and that he would have been willing to pay more.

The same is true for 1992. Again, no damages were awarded to Fitzgerald for any crop loss that year, and there is no evidence that any reduction in rent for that year was due to any conduct of the Valcarces.

DURHAM, Associate C.J., concurs in Chief Justice HOWE's concurring and dissenting opinion.